**Denise F. DELAVIGNE**

v.

**Dorsey H. DELAVIGNE, Jr.**

Civ. No. T–75–939.

United States District Court,
D. Maryland.

Oct. 10, 1975.

Earle D. Goss, Bethesda, Md., for plaintiff.

Leonard J. Kerpelman, Baltimore, Md., for defendant.

THOMSEN, District Judge.

On July 11, 1975, the defendant husband, Dorsey H. Delavigne, Jr. (Dorsey), filed in this court his petition under 28 U.S.C. § 1443 for removal of a proceed-

ing filed in the Circuit Court for Montgomery County, Maryland, by his wife, Denise F. Delavigne (Denise), for divorce, custody of their minor children, alimony, support and maintenance of their minor children and related relief. The grounds alleged for removal are that he "cannot enforce his equal civil rights as a citizen of the United States in the courts of Montgomery County, Maryland, because Maryland statutory and common law as interpreted and enforced in the courts of Montgomery County, prefers females and is discriminatory in favor of females in the division of property, award of maintenance, child support, *custody particularly,* and attorney's fees, thereby depriving male persons of the equal protection of the laws and of equal civil rights with other (female) citizens of the United States". He also argues "that the dictates of Article 46 of the Declaration of Rights of Maryland (the Equal Rights Amendment) are generally ignored by the Montgomery County Courts, as well as the dictates of Hare v. Hare [an unreported case decided by the Court of Special Appeals of Maryland on February 22, 1974, see 20 Md.App. 735, 318 A.2d 234]"; and that he "believes, and therefore alleges, that he will not be accorded Due Process nor Equal Protection" upon his motion attacking venue and other proceedings in the case in Montgomery County, based upon his constitutional claim and upon a prior filing in Anne Arundel County, not otherwise described in the petition but discussed below herein. Denise moved to dismiss the petition for removal and to remand the case to the state court, and sought an expedited hearing.

Dorsey also filed herein two petitions for an injunction to stay further proceedings in the state courts of Montgomery County. The first of those petitions was denied by Judge Miller of this court for reasons stated in a memorandum and order filed herein on September 9, particularly because Judge Mathias, of the Circuit Court for Montgomery County, had advised Judge Miller that

no copy of the petition for removal had been filed in that court and that he would stay the proceedings in that court as soon as "appropriate removal papers" were filed therein. The second petition, filed on September 11, was denied by Judge Blair of this court on the same day for the reasons stated in Judge Miller's memorandum and order.

An evidentiary hearing on all pending motions was held before me on September 30. Many exhibits were stipulated or filed by the respective parties, Dorsey and another witness testified and counsel for both sides argued at length. The parties agreed that photographic copies of the docket entries in the cases in the Anne Arundel County and Montgomery County courts and of certain papers filed therein should be obtained and considered by this court.

### Findings of Fact

Dorsey and Denise were married in 1966, and moved to Montgomery County in 1967. Denise had three children (now 18, 16 and 14 years of age respectively) of a previous marriage, who have been legally adopted by Dorsey; Dorsey and Denise had two children (Dorsey, now 7, and Louis, now 4). Dorsey's uncontradicted testimony before me was that he and Denise had not lived together as man and wife since May 1974, when Denise moved into another room.

On June 1, 1975, Dorsey spent the night in Anne Arundel County, and on June 2, while Denise was away from home, took his two sons, Dorsey and Louis, to Anne Arundel County, where he has maintained a home ever since. On June 9 he filed a bill of complaint for a divorce a vinculo matrimonii in the Circuit Court for Anne Arundel County; that case is still pending.

On June 12, Denise filed in the Circuit Court for Montgomery County her bill of complaint for divorce a mensa et thoro, for custody of the children and for support. On June 13, upon filing of her affidavit, a show cause order was issued; the papers were served on Dorsey before June 20.

On July 11, Dorsey's petition for removal under 28 U.S.C. § 1443 was filed in this court. On July 14, Dorsey's attorney filed in the Montgomery County proceeding a "Notice of Filing of Petition for Removal" dated July 11, but failed to file therewith a copy of the Petition for Removal, as required by 28 U.S.C. § 1446(e).

At the same time Dorsey filed in the Montgomery County case a motion to dismiss that case because a prior case between the parties was pending in Anne Arundel County. A hearing on that motion was held on August 15. Dorsey's attorney refused to appear, but sent two letters to the Clerk and the Judge claiming that because of the removal the Montgomery County court had lost jurisdiction. Judge Mathias, however, proceeded with the hearing, because Dorsey had still failed to comply with the provisions of 28 U.S.C. § 1446(e), and denied his motion. A show cause hearing for custody, maintenance and support was held on August 28. Dorsey's attorney again refused to appear.

Meanwhile, on July 28, Denise filed in this court a motion to dismiss Dorsey's petition for removal, and a request to remand the case to the state court. Dorsey opposed the motion and sought an injunction from our court to stay the proceeding in the Montgomery County court. On September 4, Dorsey's attorney appeared before Judge Miller, of our court, with a petition to stay the proceedings in Montgomery County. Judge Miller's memorandum and order filed herein shows that he learned that no copy of the petition for removal had been filed in the Montgomery County court, that Judge Mathias told him that he (Judge Mathias) would stay the proceedings upon receipt of the proper papers, and that he (Judge Miller) explained the law and the situation to Dorsey's attorney, who, on September 8, filed a copy of the petition in the Montgomery County court.

On September 22, Dorsey filed a "Motion for Declaratory Relief",[1] which was heard by this court on September 30, together with Denise's motion to dismiss the petition for removal and to remand the case to the Circuit Court for Montgomery County.

I

With respect to Dorsey's prayers for declaratory relief (see fn. 1, supra), this court finds and holds:

No copy of the petition for removal was filed or attempted to be filed by Dorsey's attorney or anyone on his behalf in the Circuit Court for Montgomery County until September 8.[2]

A stay of the proceedings in the Montgomery County court was automatically effected by the filing therein on September 8 of the copy of the petition for removal, the required notice having already been given. 28 U.S.C. § 1446(e).

The proceedings in the Circuit Court for Montgomery County before September 8 were not rendered a nullity by the filing of the petition in this court and the filing in the Montgomery County

---

1. In that petition Dorsey prayed this court:
   "(a) To issue a Declaratory Judgment declaring all proceedings held in Montgomery County after the date of the filing of the Removal Petition in this court to have been a nullity, and to declare particularly that the judgment and holding of the Circuit Court for Montgomery County that venue lies in that county in the proceedings between these parties is null and void and in violation of provisions of the Federal Removal Statute;

   "(b) That a fact inquiry be made by this court to determine when, in fact, a stay should and properly was had of the Montgomery County proceedings;

   "(c) That this court conduct a fact inquiry and render a judgment upon the question of when it was that a copy of the Removal Petition filed in this court had been filed in the Circuit Court for Montgomery County;

   "(d) That the Petitioner may have such other and further relief that the nature of this Petition may require."

2. The testimony of Dorsey and his witness on this point was either mistaken as to date, or confused as between notice and petition.

court merely of a notice but no copy of the petition for removal.[3]

## II

Denise's motion to remand this case to the state court is based upon this court's lack of jurisdiction of the subject matter.

■ A. It has long been held that the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States, and should be handled by the state courts and not by the courts of the United States. *Barber v. Barber*, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1858); *Ex parte Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890); *Simms v. Simms*, 175 U.S. 162, 167, 20 S.Ct. 58, 44 L.Ed. 115 (1899).

B. Dorsey relies, however, upon 28 U.S.C. § 1443(1), which provides:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;"

He alleges habitual discrimination by the Circuit Court for Montgomery County against men and in favor of women in divorce and custody cases, and argues that such discrimination deprives him of the equal protection of the laws guaranteed by the Fourteenth Amendment.

■ It has been authoritatively determined, however, in the recent case of *Johnson v. Mississippi*, 421 U.S. 213, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975):

"* * * that a removal petition under 28 U.S.C. § 1443(1) must satisfy a two-pronged test. First, it must appear that the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality.' *Georgia v. Rachel*, 384 U.S. [780], at 792 [86 S.Ct. 1783, at 1790, 16 L.Ed.2d 925]. * * *

"Second, it must appear, in accordance with the provisions of § 1443(1), that the removal petitioner is 'denied or cannot enforce' the specified federal rights 'in the courts of [the] State.' This provision normally requires that the 'denial be manifest in a formal expression of state law,' *Georgia v. Rachel, supra*, at 803 [86 S.Ct., at 1796], such as a state legislative or constitutional provision, ' "rather than a denial first made manifest in the trial of the case." ' *Id.*, at 799 [86 S.Ct., at 1794]. Except in the unusual case where 'an equivalent basis could be shown for an equally firm prediction that the defendant would be "denied or cannot enforce" the specified federal rights in the state court,' *id.*, at 804 [86 S.Ct., at 1796], it was to be expected that the protection of federal constitutional or statutory rights could be effected in the pending state proceedings, civil or criminal. Under § 1443(1),

" 'the vindication of the defendant's rights is left to the state courts

---

3. After this opinion was prepared but before it was finally typed and filed, Dorsey's attorney wrote this court a letter enclosing a copy of a portion of the hearing before the Domestic Relations Master of the Circuit Court for Montgomery County, with a copy to counsel for Denise. Although the colloquy appearing in the transcript indicates that the Master did not clearly understand the pro- visions of 28 U.S.C. §§ 1443 and 1446, the colloquy does not prove that a copy of the petition for removal had been filed with the Clerk of the Circuit Court for Montgomery County, as required by § 1446(e), before September 8. It appears that counsel for Denise had a copy of the petition, but he had no duty to file it. This court adheres to the rulings in Section I of this opinion.

except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.' *City of Greenwood v. Peacock, supra,* [384 U.S. 808], at 828 [86 S. Ct. 1800, at 1812, 16 L.Ed.2d 944]." 421 U.S. at 219–20, 95 S.Ct. at 1595.

*Accord, Baines v. City of Danville,* 357 F.2d 756 (4 Cir.), *aff'd* 384 U.S. 890, 86 S.Ct. 1915, 16 L.Ed.2d 996 (1966); *State of North Carolina v. Grant,* 452 F.2d 780 (4 Cir. 1972); *Milligan v. Milligan,* 484 F.2d 446 (8 Cir. 1973).

■ In an attempt to satisfy the first prong of the test, counsel for Dorsey argues that race is a generic term and can apply to any group of people, including the male sex.[4] The male sex is not a race, within the meaning of § 1443(1), as interpreted in *Johnson v. Mississippi, supra,* and the cases cited therein. The first prong of the *Johnson* test is not satisfied.

■ Nor does this case satisfy the second prong of the test. Dorsey is a member of Fathers United for Equal Rights, which filed suit in this court in 1972 against the Circuit Court for Baltimore County, alleging that the statutory and case law of Maryland unconstitutionally discriminated against and denied equal protection to the male party to a domestic relations suit, and seeking both injunctive and declaratory relief. After the suit was filed, the voters of Maryland, on November 7, 1972, ratified what is now Article 46 of the Declaration of Rights, a part of the Constitution of Maryland. That Article provides tersely: "Equality of rights under the law shall not be abridged or denied because of sex."

Noting that the Court of Appeals of Maryland had not yet ruled upon the effect, if any, which the amendment would have on the domestic relations laws, a three-judge court dismissed the suit without prejudice. *Fathers United for Equal Rights v. Circuit Court for Baltimore County,* 361 F.Supp. 1080 (D.C. Md.1973).

Besides Article 46 of the Declaration of Rights, Article 72A, § 1 of the Annotated Code of Maryland, as amended in 1974, requires that "in any custody proceeding, neither parent shall be given preference solely because of his or her sex. * * * "

---

4. In support of this argument, counsel for Dorsey cites the following passages from Bartlett's Familiar Quotations—

"Chiefs, who no more in bloody fights engage, * * * A bloodless race * * *." Homer, Iliad.

" * * * the race of politicians * * *." Swift, Gulliver's Travels, Voyage to Brobdingnag.

"Californians are a race of people; they are not merely inhabitants of a State." O. Henry, Strictly Business, A Municipal Report.

"The Italian race is a race of sheep." Mussolini.

"A tough, but nervous, tenacious, but restless race [the Yankees]." Samuel Eliot Morison, Maritime History of Massachusetts.

" * * * the human race." Don Marquis, archy's life of mehitabel.

It is true that the word "race" has many meanings and has been used to describe a great variety of classes. *See e. g.* Webster's International Dictionary and the Oxford English Dictionary. Indeed, the O.E.D. adds to counsel's quotations from the poets. II, 8, b, of the O.E.D.'s definitions of race, gives "One of the sexes," as one of the meanings, followed by the note *"poet."* Spenser, Steele and Pope are quoted.

Leaving the realm of belles lettres, the definition in both English and American authorities which is most applicable in the present case is that which divides mankind not into a host of national, regional or other groups, but into five races, based on ancestry, with relatively unchanging characteristics, now usually referred to as the black, brown, red, white and yellow races. See *United States v. Thind,* 261 U.S. 204, 43 S.Ct. 338, 67 L.Ed. 616 (1923); *Loving v. Virginia,* 388 U.S. 1, 10, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *In re Halladjian,* 174 F. 834, 837–40 (Cir.Ct.D.Mass.1909); *Ex parte (NG) Fung Sing,* 6 F.2d 670 (D.Wash.1925).

**368**

No case decided by the Court of Appeals of Maryland discussing Article 46 of the Declaration of Rights in this connection has been cited or found. The effect of the new Article was discussed at length in *Cooke v. Cooke,* 21 Md.App. 376, 319 A.2d 841 (1974), particularly with respect to its effect in custody cases. The principles stated in that opinion, which unless overruled by the Court of Appeals or abandoned by the Court of Special Appeals are binding on the Circuit Court for Montgomery County, do not permit any such discrimination in custody cases as Dorsey claims to fear, and this court is satisfied that if any such discrimination against husbands or fathers were shown by a trial court in this or any other case, the appellate courts of the State would handle the matter effectively.

Dorsey offered in evidence some statistics he had gathered from an examination of the papers in a considerable number of cases in Montgomery County, showing that women are more often allowed custody of children than men. The problem, however, is not one that can be solved by calculating percentages. Many factors enter into the award of alimony and child support, as well as into the award of custody. Despite our changing mores, there are still more women who are housewives than men who occupy a similar position; and, on the average, men still make more money than their wives. These factors, among others, affect awards of alimony and other awards in divorce cases, and this court concludes that no reason has been shown to believe that even-handed justice will not be done by the Maryland courts, including the Circuit Court for Montgomery County.

An order will be entered remanding the case to the Circuit Court for Montgomery County. Denise is entitled to her just costs in this court, to be charged against the bond posted by Dorsey.