**In re Kathy Elizabeth HESSON a/k/a Kathy Hesson Collins, Debtor.**

**Michael COLLINS, Plaintiff,**

v.

**Kathy Elizabeth HESSON, Defendant.**

**Bankruptcy No. 94–1–6699–PM.**
**Adv. No. 95–1–A114–PM.**

United States Bankruptcy Court,
D. Maryland.

Dec. 21, 1995.

As Corrected Jan. 24, 1996.

George E. Snyder, Hagerstown, MD, for Debtor.

Michael G. Wolff, Trustee, Rockville, MD.

## MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

Before the court is a complaint to determine dischargeability of a debt. Michael Collins ("Plaintiff") seeks a determination that the debt owed him by his ex-wife, Kathy Elizabeth Hesson ("Defendant" and "Debtor"), is nondischargeable pursuant to § 523(a)(15) of the Bankruptcy Code. A trial on the merits was held on October 3, 1995. This case involved an exception to discharge created by the Bankruptcy Reform Act of 1994, and is one of first impression for this court.

This court has jurisdiction pursuant to 28 U.S.C. § 1334 (district courts have original and exclusive jurisdiction in all cases under Title 11), 28 U.S.C. § 157(a), and Maryland District Court Local Rule 402 (all cases under Title 11 and proceedings arising under Title are deemed referred to the bankruptcy judges of this district). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The court submits the following findings of fact and conclusions of law.

## ISSUES PRESENTED

1. Is this a timely filed action?
2. What are the elements of a cause of action under § 523(a)(15)?
3. What is the applicable date for measuring debtor's ability to pay the subject debt and weighing the benefit to debtor from discharge against the detrimental consequences to the creditor?
4. Who has the burden of proof under § 523(a)(15)?
5. May there be a partial discharge of § 523(a)(15) obligations?

## FINDINGS OF FACT

Plaintiff and Defendant married in 1989 and separated in 1991. Defendant Kathy Elizabeth Hesson signed an Agreement of Voluntary Separation and Property Settlement ("the Agreement") on October 25, 1991. Fifteen months later, on January 21, 1993, Plaintiff Michael Collins signed it. Meanwhile, sometime in 1992, Debtor filed an action for divorce in the Circuit Court for Frederick County, Maryland. On August 16, 1994, the Agreement and an oral addendum were read into the Circuit Court record, ratified and approved by the Circuit Court, and incorporated but not merged into the Judgment of Absolute Divorce dated September 7, 1994, and filed September 14, 1994. The result of the oral addendum was to liquidate Debtor's obligations to Plaintiff under the Agreement and enter judgment thereon in the amount of $20,000.00 with interest at 10% per annum accruing from August 16, 1994. Execution was stayed until November 16, 1994. Defendant had the option to satisfy the judgment in full by the payment of $18,500.00 before November 15, 1994.

Defendant saw bankruptcy counsel and completed the petition, Schedules A–J, and Statement of Financial Affairs on December 14, 1994. This bankruptcy case under Chapter 7 was filed December 16, 1994. Debtor's discharge was entered April 10, 1995. Plaintiff seeks to except the Circuit Court judgment from discharge.

Because of the poor real estate market existing at the time of the drafting of the Agreement, the parties agreed to defer the sale of their home. Under the Agreement, Plaintiff could live in the house until sold, provided that so long as he occupied the house, he paid the ongoing carrying charges,

including mortgage payments, taxes and insurance, and provided necessary repairs. The house was subject to sale upon the demand of either. The parties agreed to divide all house-related obligations arising after Plaintiff moved out.

Plaintiff remained in the house until he could no longer afford the payments, moving out on August 8, 1993. He testified that his savings were depleted, his phone was cut off, and he could not afford to continue his school classes. He cancelled his insurance and retirement plan. He sold practically everything he owned in order to meet his obligations under the Agreement. On the other hand, Defendant never made any of the payments that were required of her.

After being on the market for 8–9 months, the home was sold in June 1994. Purchased for $189,000, the home sold for $145,000. The sale proceeds were insufficient to satisfy the existing mortgages. Plaintiff made good the deficiency.

Defendant waited one month after the stay of execution expired and filed this bankruptcy case under Chapter 7. In her statement of intention filed under 11 U.S.C. § 521(2)(A) she elected to reaffirm debts secured by her home and automobile, as well as one credit union debt. The target of the bankruptcy filing was the judgment in favor of Mr. Collins—there being only three other creditors holding claims aggregating less than $1,900.00 subject to discharge.

After the separation, Defendant bought a house and an automobile. In 1994 she earned $33,470.76 per annum and contributed $184.92 monthly to a 401(K) retirement program and continues to make that contribution. Shortly after drafting her schedules, she received a $2,000.00 bonus from her employer. Since being relieved from his obligations under the voluntary separation and property settlement agreement, Plaintiff has prospered. He has remarried and now earns $53,000.00 a year.

Plaintiff does not contend that his claim is for alimony or maintenance. It is undisputed that the judgment arises under a separation agreement or divorce decree and that § 523(a)(15) applies.

## PRELIMINARY DISCUSSION

Public Law 103–394, § 304(e) of the Bankruptcy Reform Act of 1994, applicable to all bankruptcy cases filed after October 22, 1994, created a new exception to a debtor's discharge. That exception codified at 11 U.S.C. § 523(a)(15) provides:

**§ 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

This section enhances the rights of family law creditors that heretofore were limited to § 523(a)(5) of the Bankruptcy Code enacted in the Bankruptcy Reform Act of 1978:

**§ 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, main-

tenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

Under the Bankruptcy Code, the law of dischargeability of marital obligations had been governed exclusively by 11 U.S.C. § 523(a)(5). This section required bankruptcy courts to divide family law monetary obligations into two parts—non-dischargeable payments of alimony, maintenance or support and dischargeable property settlement obligations. In world-class understatement, Collier says: "It is not always clear what will be deemed alimony for the purposes of Section 523(a)(5)." L. King, et al., 3 *Collier on Bankruptcy,* ¶ 523.15, 523–123 (15th ed. 1995). Another treatise describes the issues raised in § 525(a)(5):

By far the most difficult substantive problem, one that is at the heart of almost all the disputed cases, is drawing the line between alimony, maintenance and support, on the one hand, and liabilities arising out of a property settlement on the other. If a husband and wife have accumulated some wealth and then divorce, the divorce agreement will include not only payments in the nature of alimony and support, but also a division of their property. With rare exceptions, the line between settlement and support payments will be faint, irregular and blurred. Partly this arises from the recipient's indifference to

the nature of the payment. Money is money in the hands of the recipient, and (apart from possible tax consequences) the recipient has no interest in deciding whether this payment is alimony or whether it is a payment in settlement of some other property claim.

Of course, the taxability of such payments may cause parties to label them, but beyond that both husband and wife are likely to be much more interested in amount than in characterization. In any event, both are principally interested in the net economic consequence of the divorce settlement. For this reason the cases we discuss below are usually *ex post facto* attempts to characterize particular payments as one or the other.

Epstein, Nickles & White, *Bankruptcy,* § 7–29 (1992). The court's *ex post facto* exploration may seek to divine the intent of the parties in entering into the agreement, *Melichar v. Ost,* 661 F.2d 300, 302 (CA4 1981), *cert. denied* 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982), *In re Stone,* 79 B.R. 633, 640 (BC Md.1987), or the trial court in awarding alimony after making an equitable distribution or monetary award, or in some cases, of a jury. *Long v. West (In re Long ),* 794 F.2d 928, 931 (CA4 1986).

The legislative history of § 523(a)(15) is found in the floor statement of Chairman Brooks.

Subsection (e) adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such

obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

The new exception to discharge, like the exceptions under Bankruptcy Code section 523(a)(2), (4), and (6) must be raised in an adversary proceeding during the bankruptcy case within the time permitted by the Federal Rules of Bankruptcy Procedure. Otherwise the debt in question is discharged. The exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital debts that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. It is only the obligation owed to the spouse or former spouse—an obligation to hold the spouse or former spouse harmless—which is within the scope of this section. *See In re MacDonald,* 69 B.R. 259, 278 (Bankr.D.N.J. 1986).

140 Cong.Rec. H10752, H10770 (daily ed. Oct. 4, 1994) (statement of Chairman Brooks), as reprinted in 9 Bkr.L.Ed., § 84:16 (April 1995 Supp.).

Under 11 U.S.C. § 523(a)(5), spousal obligations are placed in two mutually exclusive categories—nondischargeable alimony, maintenance or support payments and dischargeable property settlement payments. This dichotomy does not do justice in all cases, because often the chancellor in fashioning relief in a divorce decree and monetary award upon dissolution of a marriage or the parties in crafting a property settlement and support agreement often looked to the use of income from, or principal of the proceeds of a property settlement agreement to supply funds otherwise supplied by payments in the nature of alimony support or maintenance. *Goggans v. Osborn,* 237 F.2d 186, 188–189 (CA9 1956), a case arising under the Bankruptcy Act of 1898, presents an excellent example of the consequences flowing from a decree for the payment of alimony or a property settlement agreement. While the latter is not subject to change in state court because of changing conditions, it may be discharged in bankruptcy. Where, as in *Goggans,* the wife waived all claims for support as consideration for an enhanced property settlement, she is out of luck after her exhusband's bankruptcy.

In Maryland, the court, in awarding alimony, is required to consider the monetary award made in connection with property disposition. Md.Code Ann., Fam.Law § 11-106(b)(11)(ii) (1991). They are significantly interrelated. The court must consider these payments in conjunction with one another. If the marital property monetary award is reversed on appeal, the alimony award should be vacated and remanded. *Strauss v. Strauss,* 101 Md.App. 490, 647 A.2d 818, 829 (1994), *cert. denied* 337 Md. 90, 651 A.2d 855 (1995); *Doser v. Doser,* 106 Md.App. 329, 664 A.2d 453, 456, n. 1 (1995). Maryland courts have the inherent power to provide for a monetary award to reserve the right to receive alimony to avoid the impact of a discharge in bankruptcy of the property settlement/support award if there is no concurrent

alimony provision. *Turrisi v. Sanzaro,* 308 Md. 515, 520 A.2d 1080, 1083–86 (1987).[1]

It is not a pleasant prospect for a state court judge, having concluded a bitter matrimonial cause, to consider the prospect of being revisited with an equally bitter alimony action some years down the line. The concept of a finite payout period for funds nominally a property settlement but actually intended for support dovetails with the idea of rehabitative nonpermanent temporary alimony. The modern trend is to limit the term of marriage dissolution payments other than child support. Thus, in dissolution, courts may shape relief by way of limited alimony or support combined with a property settlement payment or monetary award.

Many scholars urged reform in the Bankruptcy Code because of the injustice caused by the support/property division and to spare bankruptcy judges from the sophistry of reconciling the irreconcilable. This authoritative outpouring played a large role in reforming existing law. In a leading article, Professor Jana B. Singer urged amendment of the Bankruptcy Code to exempt from discharge all obligations to or for the benefit of a debtor's former spouse or children assumed in connection with a divorce or marital separation. J.B. Singer, *Divorce Obligations and Bankruptcy Discharge: Rethinking the Support/Property Distinction,* 30 Harv.J. on Legis. 43, 113–114 (1993). The editor's introduction describes the problem.

> The Bankruptcy Code currently divides divorce-related obligations into two categories: awards or agreements in the nature of support are nondischargeable; obligations arising from property divisions can be discharged in the same manner as ordinary commercial debts. Because recent developments in family law have undermined the support/property distinction and because privately negotiated divorce agreements often fail to distinguish between payments intended to serve as support and those intended to distribute property, the Code's reliance on this clas-

sification often leads to confusion and hardship for divorce obligees. In addition, because of the rise of equitable distribution as the dominant method of allocating marital gains and losses, the policy of refusing to protect divorce-related property divisions is unfair to divorcing couples who structure their financial arrangements according to modern notions of marital partnership.

Professor Singer concluded her analysis of current law with:

> Congress's insistence on preserving the support/property distinction has exacerbated an already confused body of case law. Despite a growing number of cases, the federal courts have failed to develop clear or consistent guidelines for distinguishing nondischargeable support awards from dischargeable property obligations arising out of divorce. Moreover, Congress's directive that divorce obligations be characterized according to federal law, rather than state law, has resulted in increasing federal interference with state domestic relations schemes. These judicial failures are understandable: they reflect the fact that meaningful distinctions no longer exist between support awards and property divisions.

Other publications that have addressed this issue include J.H. Gold, *The Dischargeability of Divorce Obligations Under the Bankruptcy Code; Five Faulty Premises in the Application of Section 523(a)(5),* 39 Case W.Res. L.Rev. 455, 468–69, 498 (1989). After suggesting that courts have applied § 523(a)(5) incorrectly by viewing divisions of marital property and support obligations as mutually exclusive, the prescient author called for changes that duplicate § 523(a)(15).

> Whether an obligation arising from a marital separation constitutes alimony, maintenance, or support so as to be nondischargeable should be determined by weighing the interest of the nondebtor spouse in having the obligation fulfilled against the hardship that would result to the debtor if the obligation were not dis-

---

1. The court suspects that the Maryland divorce/bankruptcy connection is not novel. At the same time that individual bankruptcy filings in

Maryland are at an all-time high, divorce and other family law cases account for one-half of the state circuit court civil jurisdiction.

charged. In weighing these competing interests, courts should focus on the needs and earning power of both the debtor and the nondebtor spouse. Although this standard is obviously imprecise, it is markedly superior to an approach which relies on criteria which may be more definite, but which bear little relation to the underlying purposes of section 523(a)(5).

R. Heotis, *Bankruptcy and Divorce: The Countervailing Policy Concerns*, 13 Whittier L.Rev. 723 (1992) (The author reviews the history and landscape of the problem and notes the lack of uniformity and judicial economy in the process suggesting the need for flexibility and a balancing test in determining the § 523(a)(5) support/property settlement issue); P.C. Alexander, *Divorce and the Dischargeability of Debts: Focusing on Women as Creditors in Bankruptcy.* 43 Cath.U.L.Rev. 351, 392–93 (1994) (Professor Peter C. Alexander urges (much to the prayers of some bankruptcy judges) that jurisdiction over marital debts should remain in the divorce court with the bankruptcy court serving as an adjunct to enforce the state court orders); P.A. Cullen, *Does Anybody Know the Rules in Federal Divorce Court? A Case For Revision of Bankruptcy Code § 523*, 46 Rutgers L.Rev. 427 (1993) (This student article traces the origin of the exception to discharge in bankruptcy against the evolution of state laws impacting the economic consequences of divorce and discusses the problems with combining a "new" divorce law and an "old" Bankruptcy Code, and urges Code revision to except all bona fide divorce-related and child support obligations from discharge); S.D. Freeburger & C. Bowles, *What Divorce Court Giveth, Bankruptcy Court Taketh Away: A Review of the Dischargeability of Marital Support Obligations*, 24 J.Fam.L. 587 (1985/1986) (A thorough review of the state of the law, together with a divorce practitioner's guide on how to deal with the Bankruptcy Code); *See generally*, Sommer & McCarity, *Collier Family Law and the Bankruptcy Code*, ¶ 6.04[1] (1993).

Section 523(a)(15) was the solution to the alimony/property settlement dichotomy and the inequities caused by such cases as the Chapter 7 filing by a high-income spouse dissatisfied with the prospect of paying a substantial property settlement to a spouse of many years. Unlike cases under § 523(a)(5) that may be tried in state court as well, responsibility for determination of this issue is placed in the United States District Courts. By virtue of 28 U.S.C. § 157(a) the District Courts may refer these actions to the bankruptcy judges for resolution.

Federal courts are thrust into the business of domestic relations with the advent of § 523(a)(15), a practice previously condemned. *See McCarty v. McCarty*, 453 U.S. 210, 220, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 (1981); *Rose v. Rose*, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599 (1987) (The whole subject of domestic relations belongs to the laws of the States and not to the laws of the United States); *Ex parte Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890); *Caswell v. Lang*, 757 F.2d 608, 610 (CA4 1985); *Delavigne v. Delavigne*, 402 F.Supp. 363, 366 (D.Md.1975), *aff'd* 530 F.2d 598 (CA4 1976); *In re Stone*, 79 B.R. 633, 640 (BC Md.1987), *aff'd* 98 B.R. 243 (D.Md.1989).

## DECISION

1. *Timely Filing.* The meeting of creditors held under 11 U.S.C. § 341(a) was first scheduled for January 17, 1995. Therefore, a complaint filed March 16, 1995, was timely as it was filed within 60 days of the first date set for the § 341(a) meeting. While an action under 11 U.S.C. § 523(a)(5) may be brought at any time in any court of competent jurisdiction, a claim seeking a declaration non-dischargeability under Code § 523(a)(15) must be filed as an adversary proceeding not less than 60 days after the first date set for the meeting of creditors held pursuant to 11 U.S.C. § 341(a). 11 U.S.C. § 523(c), Fed.R.Bankr.P. 4007(b) and 4007(c). The time for filing may be extended by a motion filed before the time has expired. Fed.R.Bankr.P. 4007(c).

2. *Elements of the Cause of Action.* Assuming a timely filed complaint, a debt not of a kind described in § 523(a)(5) and arising in the course of a divorce or separation or in connection with a separation agreement, di-

vorce decree or other order of a court of record, or made by a governmental unit (a defined term under 11 U.S.C. § 101(27)) is not dischargeable unless—

(a) the debtor lacks the ability to pay the debt from property or disposable income, or

(b) discharging the debt results in a benefit to the debtor that outweighs the detrimental consequences to the debtor's spouse, former spouse or child.

Another restatement of the statute is found in *In re Butler*, 186 B.R. 371, 373 (BC Vt.1995), as follows:

Property settlements are no longer automatically dischargeable unless the sixty-day statute of limitations under F.R.Bkrtcy.P. Rule 4007(c) has passed. Instead, property settlements are not dischargeable unless a debtor has no ability to pay the debt or, alternatively, a discharge would result in a benefit to a debtor that outweighs the harm to an ex-spouse. The use of triple negatives in this subsection has turned an otherwise well intended statute into sausage. A reversal of the exceptions to the exception is in order. For comprehension purposes only, the section can be read to make property settlements nondischargeable IF a debtor is able to pay those debts or IF a discharge would be to detrimental to the ex-spouse. Congress has decided that if a debtor is able to pay the debt owed to the ex-spouse without harming him or herself more than nonpayment would harm the ex-spouse, the debtor should uphold his or her separation obligation.

In determining whether or not under § 523(a)(15)(A) the debtor has "the ability to pay such debt from income or property … not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor …" the court is called upon to apply the "disposable income test" that also applies in Chapter 13 cases and is found in § 1325(b). That section provides:

**§ 1325. Confirmation of plan.**

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

The disposable income test has been characterized "as a poor cousin of the absolute priority rule set out in section 1129(b)(2)." Epstein, Nickles & White, *Bankruptcy*, § 9–11 (1992). In the more than ten years the disposable income test has been a part of the Bankruptcy Code, a substantial body of caselaw has been developed. *See* Lundin, *Chapter 13 Bankruptcy*, § 5.33–5.37 (2d ed. 1994). *In re Hill*, 184 B.R. 750, 755 (BC N.D.Ill. 1995) points out:

The use of the phrase "ability to pay" in Section 523(a)(15)(A) directs the Court to Section 1325(b)(2)'s "disposable income" test. The language of Section 523(a)(15)(A) essentially mirrors the language of Section 1325(b)(2). Thus, the Court finds a similar analysis is appropriate.

■ This court concludes that if the debtor has no "disposable income" to fund payment of the obligation, the debtor prevails, and the exercise is over.

■ In calculating Debtor's disposable income, the record reflects an unscheduled $2,000.00 year-end bonus and a $184.92 monthly contribution to her 401(k) retirement fund. In cases under Chapter 13, it

has been consistently held that § 1325(b) does not permit voluntary deductions for a savings account and prohibits deductions for a voluntary pension fund, retirement program, or employee stock purchase plan. Lundin, *Chapter 13 Bankruptcy*, §§ 5.36, 5.107 (2d ed. 1994); *In re Harshburger*, 66 F.3d 775, 777 (CA6 1995); *In re Cavanaugh*, 175 B.R. 369, 373 (BC Idaho 1994); *In re Festner*, 54 B.R. 532, 533 (BC E.D.N.C.1985); *In re Fountain*, 142 B.R. 135, 136–37 (BC E.D.Va.1992). The court finds that Debtor has at least $184.92 in monthly income not reasonably necessary for her maintenance in addition to her bonus and projected tax refund. Debtor sought a loan in a charade to create a record for this case that her finances were poor. The loan application was purposefully incomplete and insufficient. The submission proved nothing.

■ 3. *Applicable Date for Measurement*—The court must now address the time when to take the financial snapshot required under § 523(a)(15). In an analysis of cases under § 523(a)(15), one court has decided that "[f]or purposes of both affirmative defenses, the Court finds the appropriate measuring point is the date of the filing of the Complaint." *In re Hill*, 184 B.R. at 754. This court disagrees and deems the measuring point for the affirmative defenses as the time of trial. In a § 523(a)(15) case, the court is not dealing with the court's or the parties' intent at the time of the decree or agreement. Instead, the court is directed to determine the debtor's ability to pay the debt and weigh the benefit of discharging the debt against the detrimental consequences to the recipient. See *In re Becker*, 185 B.R. 567, 570 (BC W.D.Mo.1995) ("While there is some dispute over whether Lynus was employed at the time of the divorce, it is clear that he is employed at this time.").

This is not a historical search, but as with a student loan inquiry under § 523(a)(8) is an examination of current circumstances. For example, after the filing of the case, either party might have sustained a disabling injury or may have won the lottery, or have experienced a substantial change in earnings. Post-filing events could easily affect either debtor's ability to pay the debt or the balance between debtor's benefit from discharge and the detrimental consequences of discharge to the recipient. Use of a time substantially before the trial date could produce a silly result that mocks congressional intent.

■ 4. *Burden of Proof*—This is not a critical issue. Rarely is evidence in equipoise. Normally the party objecting to discharge bears the burden of proof by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 286–90, 111 S.Ct. 654, 659–61, 112 L.Ed.2d 755 (1991). In student loan cases "[t]he burden of proof is on the debtor, and debtors' success rate in the area is not high." R.E. Ginsberg & R.D. Martin, *Bankruptcy, Texts Statutes Rules* § 11.06[1], 11–131 (3d ed. 1992). *In re Plotkin*, 164 B.R. 623, 624 (BC W.D.Ark.1994). *See also* T. McVey & F. Koger, *In A Proceeding to Determine the Nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A), Is the Burden of Proof Always Merely Preponderance of the Evidence?* Norton, *Bankruptcy Law Adviser*, p. 3 (November, 1995). *In re Hill*, 184 B.R. 750, 753 (BC N.D.Ill.1995) (relying on student loan cases by analogy) concludes that the burden is upon the debtor to plead affirmative defenses that may be made in the alternative. The *Hill* opinion relies in part upon a comment by Bankruptcy Judge Margaret Dee McGarity, an authoritative source in the field of the relationship of family law and bankruptcy. Judge McGarity states:

Although the creditor has the burden of proof for exceptions to discharge, it appears that once an action has been filed the burden of production of evidence shifts to the debtor to show inability to pay or to show that the benefit of the discharge to the debtor outweighs the detriment to the creditor.

M.D. McGarity, 27 *Weekly News and Comment*, Bankruptcy Court Decisions, Vol. 27, (May 16, 1995) No. 1, at A10.

In cases from Western Missouri the courts found that the burden of going forward, not the burden of proof, shifts to the debtor. This concept is also adopted in the case of *In re Phillips*, 187 B.R. 363, 368 (BC M.D.Fla. 1995), and in part in the cases of *In re Silvers*, 187 B.R. 648 (BC W.D.Mo.1995), and *In re Florio*, 187 B.R. 654, 657 (BC W.D.Mo.

1995). In another case out of the same district, the court found that § 523(a)(15) creates a rebuttable presumption of non-dischargeability as to property settlement debts unless debtor meets the test of § 523(a)(15) (*In re Becker,* 185 B.R. 567, 569 (BC W.D.Mo.1995)).

The Bankruptcy Court in Vermont finds the burden placed squarely upon the objecting creditor. *In re Butler,* 186 B.R. 371, 373–75 (BC Vt.1995). Judge Conrad relies upon an analysis of *Grogan v. Garner, supra,* and the congressional silence with respect to the standard of proof. He distinguishes § 523(a)(15) from the student loan cases of § 523(a)(8) where the burden is on the debtor to plead and prove hardship in order to be released from a student loan obligation. Three reasons are given for the distinction. First, the creditor is objecting to a discharge of divorce obligations; the debtor is not seeking dischargeability. Second, subsections (a)(8) and (a)(15) are worded differently. "The former calls for proof of the detrimental effects of *non*-dischargeability, while the latter emphasizes proof of benefits and harm if there were a discharge." 186 B.R. at 374. Third, Judge Conrad points out that § 523(a)(15) and not § 523(a)(8) is included within the list of subsections of § 523(a) that require determination by the Bankruptcy Court. In the absence of such determination, the debtor is discharged from the legal obligation to repay the particular debt.

Other Bankruptcy Courts have also examined the issue of placing the burden of proof. In the case of *In re Carroll,* 187 B.R. 197, 200 (BC S.D.Ohio 1995), the court set out an easy to follow prescription in shifting the burden of proof to debtor:

> The Court therefore holds that the Plaintiff must merely establish that the relevant debt is incurred by the Debtor in the course of a divorce or separation or in

connection with a separation agreement, divorce decree or other order of a court of record. Upon such showing, the burden of proof will necessarily shift to the Debtor who must prove either an inability to pay the debt under § 523(a)(15)(A), or that the discharge would result in a benefit to the Debtor that outweighs the detrimental consequences to the Debtor's spouse or children under § 523(a)(15)(B).

The same conclusion is reached in another Ohio case, *In re Woodworth,* 187 B.R. 174, 177 (BC N.D.Ohio 1995). *In re Comisky,* 183 B.R. 883 (BC N.D.Cal.1995), places the burden squarely on the debtor.

 This court holds that Plaintiff must file a timely adversary proceeding and prove a cause of action based upon a debt incurred by debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other qualifying order.[2] Once plaintiff has overcome this obstacle, this court finds that the burden of going forward and the burden of proof is bifurcated. If the debtor can show the inability to pay the § 523(a)(15) debt then the examination stops. There is no motivation for plaintiff to meet that burden. *See, In re Carroll,* 187 B.R. 197 (BC S.D.Ohio 1995).[3] However, if the debtor can afford to make the payment, then the plaintiff has the burden, as is the norm in dischargeability actions, to show that the detrimental consequences outweigh the benefit to debtor. This bifurcation results in placing the burden upon the party more able to present evidence. Thus, the debtor must plead the affirmative defense of § 523(a)(15)(A) or waive it. In that event, the court goes immediately to the issues of § 523(a)(15)(B) where plaintiff has the burden of proof.

 Next, the court must decide whether the discharge of the debt outweighs the det-

---

2. The intention of Congress not to benefit third parties is set out in the legislative history. *Contra,* Ray, "The Dischargeability of Support Obligations," A.B.I. Journal p. 16 (Sept. 1995).

3. What if a 62–year old debtor possesses substantial assets in an individual retirement account (IRA) or other exempt pension plan? Can the income from the IRA holdings be used in the court's calculation of disposable income? The

Fourth Circuit answers the question "no" in cases under Chapter 13. *See In re Solomon,* 67 F.3d 1128 (CA4 1995). In *Solomon,* the imputed or actual income from debtor's $2 million in IRA accounts was held not includible in the calculation of disposable income. However, in *Solomon* the issue involved was the Chapter 13 "best interest of creditors" test that has no relevance in § 523(a)(15).

rimental consequences to Plaintiff of non-payment. In making this decision, the court notes that it will confront two party cases (i.e., the debtor owes her spouse money) and three party cases (i.e., debtor is to hold her spouse harmless from the claim of a third party).

In the legislative history set out above, Congress described two types of payments subject to § 523(a)(15). One is the case where the debtor spouse promises to hold the recipient spouse harmless on account of certain debts—generally joint obligations. Before (a)(15), the result was that the debtor was discharged from repayment of both the original claim and the hold harmless or indemnification claim, leaving the nondebtor spouse subject to the claim of the creditor. A second type of arrangement described in the legislative history is where the spouses have agreed to a larger property settlement in exchange for a reduction of alimony. Another type of payment, not described in Chairman Brooks' statement, but partially present here, is where the parties even accounts between themselves.

If the debtor has disposable income, the Chairman's statement,

"[T]he benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the debtor's need for a fresh start."

impacts differently upon each of the three scenarios. 140 Cong.Rec. H10752, H10770 (daily ed. Oct. 4, 1994) (statement of Chairman Brooks). The most obvious benefit is to the older recipient who is either disabled, unable or ill-equipped to work and is dependent upon a lump sum payment from a high-income professional. The detrimental consequence to the debtor is having less money than if the matrimonial obligations were ignored. The hold harmless provisions present a more difficult case. What can the debtor afford? What impact is there upon the non-debtor spouse suddenly faced with the sole obligation to make unforeseen payments? The third arrangement is the present one—Debtor owes Plaintiff money.

What must be galling, for Plaintiff is that he did what he promised to do. He carried the house payments until he reached the end of his resources. He exhausted his savings and cancelled his insurance and retirement plan. His telephone was cut off. He dropped out of school, because he could not afford tuition and meet his obligations under the agreement with Debtor. Meanwhile, although the Debtor made no required payments under the Agreement, she bought a home and an automobile. She filed this bankruptcy case as a capstone to her program of dishonor of the agreement.

The court must now weigh the testimony and decide whether discharge of the judgment outweighs the detrimental consequences to Mr. Collins. In making this decision, it is well to repeat a portion of Chairman Brooks' floor statement:

The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's non-payment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

*Id.* There was no substantial detriment shown to Mr. Collins resulting from the discharge of this debt other than the monetary loss of a $20,000.00 receivable. Plaintiff does not owe this sum to anyone else. There is nothing in the record demonstrating that his not having this money outweighs the consequences of making Debtor pay the debt. After all, as the court points out in the case of *In re Hill,* 184 B.R. 750, 756 (BC N.D.Ill. 1995), Mr. Collins could have filed a case under Chapter 7 as a "sensible solution" to their combined problems. Congress extended this invitation to Title 11 in the floor statement—that there would be little detriment to the spouse if the debt could not be collected from her.

In summary, Defendant prevails. The addition of § 523(a)(15) provides no help to this

Plaintiff who honored his agreement and endured severe personal sacrifices in the process and who did not elect to take the bankruptcy option. In a two-party scenario of § 523(a)(15), short of a greater showing of a present need, it is hard to conceive of a situation when the creditor prevails. The judgment in this case is the same as it would have been before the 1994 amendment. The result is mandated by Congress. It is not by any measure a fair one, because it rewards irresponsibility. On the other hand, no one should assume that life is fair. As was said by Judge Patricia M. Wald of the late J. Skelly Wright: "[a]s a man of the world, he knew that life was not fair; as a judge, however, he refused to adopt that as a legal norm." P.M. Wald, *In Memoriam:* J. Skelly Wright, 102 Harv.L.Rev. 363, 364 (1988). Judge Murnaghan in his dissent in *Randall v. Lukhard,* 729 F.2d 966, 970 (CA4 1984), points out:

> Fair behavior of citizens to one another is the touchstone of a civilized state. Maintenance of fair treatment by individuals is a primary responsibility of government, including the courts, when decent action is not voluntary.

While the result reached in this case is an unfair one, § 523(a)(15) permits no other.

5. *Partial Discharge*—Assuming that Plaintiff had sustained his burden under § 523(a)(15)(B), must the court enter judgment in the full amount? Does this subsection allow the court to fashion a judgment payable in installments over a period of time or to enter a judgment for less than the full amount of the debt? One of the earliest reported cases applying § 523(a)(15), *In re Comisky,* 183 B.R. 883 (BC N.D.Cal.1995), dealt with this issue. *Comisky* is similar to the case at hand insofar as it is a two-party case where debtor owed a liquidated debt to his former spouse. Debtor retained possession of the family home. His former spouse was to receive $38,619.00 for her share of the community, with $20,000.00 payable in cash upon refinancing and the rest in the form of a note secured by the residence. Debtor refinanced and paid the $20,000.00 as agreed. He was unable to pay the remaining $18,-619.00 and filed a bankruptcy case under Chapter 7. The home was lost at foreclosure. After concluding that an "all or nothing" result is not mandated by § 523(a)(15), and that debtor had disposable income of $200–$300 a month, the court awarded plaintiff judgment in the sum of $10,000.00, with the balance of the debt discharged. The judgment carried interest at the legal rate and could not be enforced so long as debtor made payments in the sum of $200 per month until paid in full.

The court explained, relying upon three student loan cases:

> Section 523(a)(8) of the Code is similar to section 523(a)(15) in that it provides for a non-dischargeable debt with two exceptions. It provides that a student loan is not dischargeable unless it is either more than seven years old or making the debt nondischargeable would impose an undue hardship on the debtor. In *In re Yousef,* 174 B.R. 707 (Bkrtcy.N.D.Ohio 1994), Bankruptcy Judge Speer held that where the debtor would suffer undue hardship if forced to pay all of the student loan, but could pay part of it, the court has discretion to declare only part of the debt nondischargeable. This approach seems fair and sound, and is directly applicable to the issue now before this court.

> Moreover, several bankruptcy courts have held that in appropriate cases the court may both find a nondischargeable debt and limit the enforcement of the judgment. See, e.g., *Matter of Sands,* 166 B.R. 299 (Bkrtcy.W.D.Mich.1994); *In re Webb,* 132 B.R. 199 (Bkrtcy.M.D.Fla.1991). These cases also seem applicable in principle to the issue here.

*Id.* at 844. Earlier, Judge McGarity wrote:

> The "ability to pay" test uses the same language as the "disposable income" test under 11 U.S.C. Section 1325(b)(2) and would presumably be analyzed in the same manner. The statute does not say "to the extent of the debtor's ability to pay" or similar language that would allow the court to discharge the debt in part, although some courts have used their equitable powers to find some student loans discharged in part.

Bankruptcy Court Decisions, *Weekly News and Comment,* Vol. 27, No. 1, p. A9 (May 16, 1995). Judge Koger observed "this is probably an all or nothing situation." *In re Silvers,* 187 B.R. 648, 649 (BC W.D.Mo.1995).

The court need not reach this issue in the resolution of the instant case. The issue is a fairly debatable one and final resolution must await an opinion of the Supreme Court or the Fourth Circuit. One may observe that the concept of "fairness" discussed above would be strained if a court found for defendant after finding that she had the ability to pay 95% of such debt.

An order will be entered in accordance with the foregoing.