In re Edward A. CAMPBELL, Debtor.

Margaret Carlson CAMPBELL, Plaintiff,

v.

Edward A. CAMPBELL, Defendant.

Bankruptcy No. 95–73966.
Adv. No. 95–8301.

United States Bankruptcy Court,
D. South Carolina.

April 29, 1996.

Joy Goodwin, Columbia, SC, for Edward A. Campbell.

Andrew Marine, Aiken, SC, for Margaret Carlson Campbell.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER came before the Court for trial upon the complaint of the Plaintiff Margaret Carlson Campbell ("Ms. Campbell"), the ex-wife of the Debtor/Defendant Edward A. Campbell ("Mr. Campbell" or "Debtor"), seeking an order of the Court determining that certain debts incurred in the divorce and marital property distribution of the parties are excepted from discharge pursuant to 11 U.S.C. § 523(a)(15).[1]

After receiving the testimony, considering all the evidence and weighing the credibility of the witnesses, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[2]

---

1. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number only.

2. The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

## FINDINGS OF FACT

1. Mr. and Ms. Campbell were married on May 24, 1985 and had no children from this marriage. Ms. Campbell has three children from a prior marriage. On April 12, 1995, a hearing for divorce between the parties was held in Aiken, South Carolina. On June 21, 1995, the Family Court issued a decree of divorce ("Divorce Decree") on the grounds of one year's separation with the following Findings of Fact relevant to this action:

   a. "The majority of the value of the marital property is contained in the husband's retirement plan and savings and investment plan" and the Court "finds that the marital debt is significant and plays a major role in the Court's decision regarding property division" (Paragraph 9).

   b. "The wife's request for alimony should be denied for the following reasons. First the wife is an able bodied individual capable of supporting herself. Secondly, the wife will have none of the marital debt obligation as a result of this Order. Thirdly, she will receive certain monies as result of the equitable division ordered by this Court" (Paragraph 14).

   c. The wife is solely responsible for student loans of her children which includes $18,000.00 on one child and $16,000.00 on her two other children (Paragraph 19).

   d. The husband is responsible for all of the credit card debt on six credit cards totaling $39,452.00 (Paragraph 22).

   e. "To balance equities between the parties, the husband should pay the wife the amount of $9,000.00 which represents approximately 50% of the marital assets remaining once the debts and assets are considered ... The husband is to keep all the savings and investment plan and retirement plan monies" (Paragraph 23).

   f. "The parties had a State Income Tax refund of $2,092.00 and a Federal Income Tax refund of $1,894.00. The Court finds that the husband should be reimbursed the $275.00 he was required to pay for the appraisal from the income tax money, and the wife should receive $1,000.00 towards her attorney's fees ... The remainder of the income tax money ($2,711.00) was to be divided equally between the two parties" (Paragraph 24).

2. A little over a month after the entry of the Divorce Decree, on July 27, 1995, Mr. Campbell filed a voluntary Chapter 7 bankruptcy petition.

3. Mr. Campbell's Schedule I, filed with the bankruptcy petition and admitted into evidence in this trial, reflect the following monthly income:

**Income:** $5,993.00

**Payroll Deductions:**

| | |
|---|---|
| Payroll Taxes and Social Security | $1,875.00 |
| Insurance | $ 470.60 |
| Other Deductions | $ 491.24 |
| Subtotal | $2,837.35 |

**Total Net Monthly Take Home Pay:** $3,155.65

4. Mr. Campbell's Schedule J, filed with the bankruptcy petition and admitted into evidence, reflect the following monthly expenditures:

| | |
|---|---|
| Home mortgage payment | $1,276.00 |
| Electricity | $ 203.00 |

| | |
|---|---|
| Water & Sewer | $ 20.46 |
| Telephone | $ 65.75 |
| Cable | $ 32.92 |
| Garbage | $ 12.50 |
| Home maintenance | $ 81.92 |
| Food | $ 143.00 |
| Clothing | $ 50.00 |
| Medical | $ 40.00 |
| Transportation | $ 200.00 |
| Charitable Contributions | $ 140.00 |
| Life Insurance | $ 69.34 |
| Auto Insurance | $ 44.00 |
| Auto Taxes | $ 11.00 |
| Auto Installment Payments | $ 446.00 |
| **TOTAL MONTHLY EXPENSES** | $2,835.89 |

5. At the trial, Ms. Campbell submitted her W–2 returns from 1995 showing a gross income from one job of $30,284.15 and from a second job for $1,755.00. She also submitted a financial declaration dated April 10, 1996 with the following information:

| | | |
|---|---|---|
| **Income:** | | $2,833.00 |

Payroll Deductions:

| | | |
|---|---|---|
| Payroll Taxes | $ 461.00 | |
| Social Security | $ 159.00 | |
| Subtotal | $ 620.50 | |

| | |
|---|---|
| Total Net Monthly Take Home Pay: | $2,212.50 |

**Expenditures:**

| | | |
|---|---|---|
| Rent | | $ 600.00 |
| Food and household supplies | | $ 120.00 |
| Utilities | | $ 140.00 |
| Telephone | | $ 200.00 |
| Laundry and cleaning | | $ 20.00 |
| Clothing | | $ 20.00 |
| Medical | | $ 30.00 |
| Insurance | | $ 47.00 |
| Entertainment | | $ 20.00 |
| Incidentals | | $ 20.00 |
| Auto Expense | | $ 175.00 |
| Other Installment Payments (Itemized Below): | | $ 565.00 |
| ELSC college loan | $ 180.00 | |
| 1st Card credit card | $ 60.00 | |
| 1st USA credit card | $ 85.00 | |
| JC Penney credit card | $ 20.00 | |
| BP Bank One credit card | $ 50.00 | |
| Citibank credit card | $ 70.00 | |
| Attorney fee | $ 100.00 | |
| Daughter tuition | | $ 250.00 |
| Daughter expenses | | $ 100.00 |
| **TOTAL MONTHLY EXPENSES** | | $2,307.00 |

6. Ms. Campbell, age 49, is a medical secretary. She testified at the hearing that since the divorce she has obtained a second job to meet her regular monthly expenses that include tuition for her youngest daughter. Ms. Campbell's middle daughter lives at home, is employed as a school teacher, and contributes approximately $100.00 per month to the

household expenses. Ms. Campbell's youngest daughter is presently a student on partial scholarship at Indiana University in Pennsylvania. Ms. Campbell pays part of her tuition and expenses. Ms. Campbell also pays towards the college loan debt of her oldest daughter who is married and lives apart from Ms. Campbell.

7. Mr. Campbell, age 58, is a professional engineer at the Savannah River Site in Aiken, South Carolina. He testified that since filing for bankruptcy, his income tax withholding had increased by approximately $260.00 per month since he is now filing as single. He admitted in testimony that "other deductions" in his schedules were withholding for his retirement and savings and investment plan. The withholding for the savings and investment plan is a voluntary withholding where Mr. Campbell and his employer (Westinghouse Savannah River Company) contribute to the plan. The amount of the employee contribution is determined by the employee and Mr. Campbell testified that he has the option of not contributing anything to his savings and investment plan. In recent years, the Savannah River Site has undergone massive layoffs and Mr. Campbell presented a notice which he had received from his employer stating that Westinghouse plans to lay off over nineteen hundred workers within the next six months. Mr. Campbell also testified that he volunteers as a swim team judge at national events and does include in his living expenses, the costs of travel to swim meets around the country.

8. Ms. Campbell filed the within adversary proceeding asking that the debt to her of the $9,000.00 be declared non-dischargeable pursuant to § 523(a)(15) as being a debt "not of the kind described in paragraph (5) that is incurred in the course of a divorce ... or in connection with a divorce decree or other court of record." The Plaintiff is also requesting that this Court find the 1995 tax refunds non-dischargeable and order the disbursement according to the Divorce Decree. Mr. Campbell testified that the state tax refund is held in his divorce attorney's trust account and that he has been holding the federal tax refund in a savings account. Ms. Campbell originally further requested that the debts to the six credit cards listed in Item 20 of the Divorce Decree be declared nondischargeable under § 523(a)(15). Since the filing of the complaint, the parties have determined that Ms. Campbell is not a co-debtor on any of the six credit cards and is therefore not jointly liable for those debts incurred in the marriage. Therefore, the Plaintiff has withdrawn her objection to the discharge of those debts listed in Item 20 of the divorce decree and this matter concerning the credit card debt is no longer in dispute.

---

## CONCLUSIONS OF LAW

### A. INTRODUCTION

A little over a month after the Plaintiff and the Debtor were divorced and the marital assets and liabilities divided by the Family Court, the Debtor filed for bankruptcy protection. One of the apparent reasons for filing the voluntary Chapter 7 petition was to discharge the obligations imposed upon him by the Family Court. It has not been uncommon for a party who is left in financial distress as a result of a divorce or property settlement order or who in his view received inequitable treatment in the family courts, to seek relief from the consequences of such orders by seeking to discharge debts in a bankruptcy. Often, the primary issue for determination in bankruptcy court would be whether the debts to the non-debtor spouse were non-dischargeable alimony, maintenance or support debts or dischargeable property settlement or asset division debts.

Under the Bankruptcy Code, the law of dischargeability of marital obligations had been governed exclusively by 11 U.S.C. § 523(a)(5). This section required bankruptcy courts to divide family law monetary obligations into two parts— non-dischargeable payments of alimony, maintenance or support and dischargeable property settlement obligations. In world-class understatement, Collier says: "It is not always clear what will be deemed alimony for the purposes of Section 523(a)(5)." L. King, et al., 3 *Collier on Bankruptcy*, ¶ 523.15, 523–123 (15th ed. 1995). Another treatise describes the issues raised in § 523(a)(5): By far the most difficult substantive problem, one that is at the heart of almost all the disputed cases, is drawing the line between alimony, maintenance and support, on the one hand, and liabilities arising out of a property settlement on the other.

If a husband and wife have accumulated some wealth and then divorce, the divorce agreement will include not only payments in the nature of alimony and support, but also a division of their property. With rare exceptions, the line between settlement and support payments will be faint, irregular and blurred.

*In re Hesson,* 190 B.R. 229 (Bkrtcy.D.Md. 1995).

Despite the rulings of the family courts or their pre-bankruptcy agreements, parties were in a position to effectively re-litigate a substantial number of the issues surrounding the divorce as part of the dischargeability determination to be made pursuant to § 523(a)(5).

Many scholars urged reform in the Bankruptcy Code because of the injustice caused by the support/property division and to spare bankruptcy judges from the sophistry of reconciling the irreconcilable. This authoritative outpouring played a large role in reforming existing law. In a leading article, Professor Jana B. Singer urged amendment of the Bankruptcy Code to exempt from discharge all obligations to or for the benefit of a debtor's former spouse or children assumed in connection with a divorce or marital separation. J.B. Singer, *Divorce Obligations and Bankruptcy Discharge: Rethinking the Support/Property Distinction,* 30 Harv.J. on Legis. 43, 113–114 (1993).

*In re Hesson,* 190 B.R. 229, 234 (Bkrtcy. D.Md.1995).

Congress reacted in 1994 and amended § 523(a) by adding a new subsection, § 523(a)(15), in the Bankruptcy Reform Act of 1994, effective October 22, 1994. The purpose of this new subsection was to protect a non-debtor spouse who had agreed to a lower or no alimony payment in exchange for a larger property settlement or to protect a spouse from the ricochet effect of a discharge of a "hold harmless" agreement. With no Supreme Court or Circuit Court of Appeals cases on this new subsection, the interesting issue will be how broad § 523(a)(15) will be interpreted. To begin with, Courts must focus on the legislative history surrounding the enactment of § 523(a)(15).

Subsection (e) adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

The new exception to discharge, like the exceptions under Bankruptcy Code section 523(a)(2), (4), and (6) must be raised in an adversary proceeding during the bankrupt-

cy case within the time permitted by the Federal Rules of Bankruptcy Procedure. Otherwise the debt in question is discharged. The exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital debts that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. It is only the obligation owed to the spouse or former spouse—an obligation to hold the spouse or former spouse harmless—which is within the scope of this section. *See In re Mac-Donald,* 69 B.R. 259, 278 (Bankr.D.N.J. 1986).

140 Cong.Rec. H10752, H10770 (daily ed. Octo. 4, 1994) (statement of Chairman Brooks).

### B.   11 U.S.C. § 523(a)(15)

The new subsection 523(a)(15) provides as follows:

Exceptions to discharge:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs

the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 U.S.C. § 523(a)(15).

Thus, the first issue for a court is whether the subject debt is a debt not of the kind described in paragraph § 523(a)(5) and was incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court. Clearly in this case, both parties do not dispute that the subject obligations are not of the kind described in § 523(a)(5) but only the kind described in § 523(a)(15), that the obligations were incurred by the Debtor in the divorce and that the Plaintiff has standing as the former spouse of the Debtor pursuant to § 523(a)(15).

### C.   BURDEN OF PROOF AND TIMING

This Court has previously found that the burden of proof to prove the initial requirements in the first paragraph of § 523(a)(15) should rest with a plaintiff but the burden of proof in the affirmative defenses of § 523(a)(15)(A) and § 523(a)(15)(B) rest upon the debtor. *In re Strong,* No. 94–75489–W, C–95–8100 (Bankr.D.S.C. 11/13/95) and *In re Scott,* 94–76092–W, C–95–8065 (Bankr.D.S.C. 10/24/95).

There are different schools of thought on this issue. *See In re Hesson,* 190 B.R. 229, 239 (Bkrtcy.D.Md.1995). Judge Mannes adopted a bifurcation approach to the burden of proof in his recent *In re Hesson* opinion.

This court holds that Plaintiff must file a timely adversary proceeding and prove a cause of action based upon a debt incurred by debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other qualifying order. Once plaintiff has overcome this obstacle, this court finds that the burden of going forward and the burden of proof is bifurcated. If the debtor can show the inability to pay the § 523(a)(15) debt then the examination stops … However, if the debtor can afford to make the payment, then the plaintiff has the burden, as is the norm in dischargeability actions, to

show that the detrimental consequences outweigh the benefit to debtor. This bifurcation results in placing the burden upon the party more able to present evidence. Thus, the debtor must plead the affirmative defense of § 523(a)(15)(A) or waive it. In that event, the court goes immediately to the issues of § 523(a)(15)(B) where plaintiff has the burden of proof.

*In re Hesson,* 190 B.R. 229, 239 (Bkrtcy. D.Md.1995). However, the majority of courts have found that the burden of proof under § 523(a)(15)(A) and § 523(a)(15)(B) falls upon the Debtor.

Moreover, Section (A) of 523(a)(15) requires a showing that the Debtor does not have the ability to pay. If the burden is placed on the Plaintiff to show the Debtor does not have the ability to pay, the Plaintiff would want to fail to meet the burden. Similarly, section (B) requires a showing that discharging the debt would result in a greater benefit to the Debtor. Again, if the burden is on the Plaintiff, the Plaintiff would want to fail to meet the burden. Thus, by the very nature of Section 523(a)(15), the burden of the exceptions must shift to the Debtor.

*In re Hill,* 184 B.R. 750, 753 (Bkrtcy.N.D.Ill. 1995). *Also see In re Florez,* 191 B.R. 112 (Bkrtcy.N.D.Ill.1995); *In re Phillips,* 187 B.R. 363 (Bkrtcy.M.D.Fla.1995); *In re Florio,* 187 B.R. 654 (Bkrtcy.W.D.Mo.1995); *In re Comisky,* 183 B.R. 883 (Bkrtcy.N.D.Cal. 1995); *In re Anthony,* 190 B.R. 429 (Bkrtcy. N.D.Ala.1995); *In re Silvers,* 187 B.R. 648 (Bkrtcy.W.D.Mo.1995); *In re Carroll,* 187 B.R. 197 (Bkrtcy.S.D.Ohio 1995) and *In re Becker,* 185 B.R. 567 (Bkrtcy.W.D.Mo.1995). This Court agrees with the conclusion reached by the majority of the courts and this Court's previous opinions in *In re Scott* and *In re Strong.* Therefore, as Ms. Campbell has met her burden of proof of timely filing an adversary proceeding and proving a cause of action based upon a debt incurred by the Debtor in the course of a divorce, the burden will now be upon Mr. Campbell to show either the inability to pay the § 523(a)(15) debt or that the detrimental consequences to Ms. Campbell are outweighed by the benefits to him of a discharge of these

debts. As in the other subsections of § 523(a), such a burden of proof must be met by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The final question before discussing the affirmative defenses of § 523(a)(15)(A) & (B) is the proper time period to make the determinations including the Debtor's ability to pay the debt. Because circumstances can change drastically following a divorce and the filing of bankruptcy, a critical issue is whether these determinations pursuant to § 523(a)(15)(A) and § 523(a)(15)(B) should be the date of the filing of the petition, the time of trial, or perhaps some other date. While the *In re Hill* opinion held that the time of the filing of the complaint should be the operative time period, the Court in *In re Hesson* found that the time of trial should control. This Court adopts the latter standard as it gives the Court an opportunity to examine the parties' present financial conditions, especially the benefits that a debtor may have received from a discharge of other debts in a Chapter 7.

### D.  11 U.S.C. § 523(a)(15)(A)

■ Having met the prerequisites to § 523(a)(15), the Court must now focus on whether the Debtor has the ability to pay the debts. The initial issue is which "ability to pay" test should be used. This Court in the *In re Scott* opinion and the *In re Hill* court, among others, have used the Chapter 13 confirmation "disposable income" test of § 1325(b)(2).

To succeed under Section 523(a)(15)(A), the debtor must show an inability to pay the debt at issue. *See* 11 U.S.C. § 523(a)(15)(A). "In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts." 140 Cong. Rec. H. 10752–1 (daily ed. Oct. 4, 1994). The use of the phrase "ability to pay" in Section 523(a)(15)(A) directs the Court to Section 1325(b)(2)'s "disposable income"

test. The language of Section 523(a)(15)(A) essentially mirrors the language of Section 1325(b)(2). Thus, the Court finds a similar analysis is appropriate.

*In re Hill,* 184 B.R. 750, 754, 755 (Bkrtcy. N.D.Ill.1995). This Court holds that the disposable income test of § 1325(b) is the proper test. The Fourth Circuit has recently defined the "disposable income test" of § 1325(b).

> The statute defines "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2) ... "[R]ather than engaging in hopeless speculation about the future," a court should determine projected disposable income by calculating a debtor's "present monthly income and expenditures" and extending those amounts over the life of the plan. *In re Crompton,* 73 B.R. 800, 808 (Bankr. E.D.Pa.1987).

*In re Solomon,* 67 F.3d 1128 (4th Cir.1995). As stated in the Findings of Fact, Mr. Campbell has an income of over $70,000.00 per year, drives a new vehicle with monthly payments in the amount of $446.00 and has almost $5,900.00 per year voluntarily deducted from his paycheck for a savings plan. His schedules reveal that he has excess income per month. Additionally, it is without question that the Debtor has under his or his attorney's actual control, the parties' 1995 state and federal tax returns which total $3,986.00. With an excess budget, these refunds do not appear necessary to his support or maintenance. These facts lead the Court to believe that the Debtor has the "ability to pay" these debts to Ms. Campbell.

■ Some courts have found that even if there is a finding that the Debtor can not repay the entire debt, he may be entitled to a partial discharge based upon what he can afford, similar to the partial discharge test of § 523(a)(8) for student loans. *See In re Comisky,* 183 B.R. 883 (Bkrtcy.N.D.Cal.1995). This District has adopted the partial discharge test for student loans as set forth by the Second Circuit in *Brunner v. New York State Higher Educ. Services Corp.,* 831 F.2d 395 (1987) to determine if a debtor was entitled to a hardship discharge from a student loan pursuant to § 523(a)(8).[3] *In re Ammirati,* 187 B.R. 902 (D.S.C.1995). While such a partial discharge may be appropriate under some circumstances, the Court does not believe such is appropriate in this case and finds that the Debtor has failed to show by the preponderance of the evidence, that he lacks the ability to repay these debts.

### E. 11 U.S.C. § 523(a)(15)(B)

Because the tests under § 523(a)(15) are disjunctive, having found the Debtor has failed to show that he can not afford to make the payments pursuant to § 523(a)(15)(A), the Court must now determine the effect of § 523(a)(15)(B) and whether Mr. Campbell can prove that the detrimental consequences to Ms. Campbell are outweighed by the benefit of his fresh start.

> Under Section 523(a)(15)(B) a debtor must show the benefit of a discharge outweighs the detrimental consequences to the nondebtor spouse, former spouse or child of the debtor. *See* 11 U.S.C. § 523(a)(15)(B). For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substan-

**3.** In *Brunner,* the court held that in order to justify an undue-hardship discharge, the debtor must demonstrate: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Id.* at 396. For reasons set forth below, this court holds that the Brunner test sets forth the proper standard for determining undue hardship under § 523(a)(8)(B) and will apply that test in reviewing the ruling of the Bankruptcy Court. *In re Ammirati,* 187 B.R. 902 (D.S.C.1995).

tial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start. 140 Cong.Rec. H. 10752–1 (daily ed. Oct. 4, 1994). The lack of an analogous Code provision compels the Court to search for its own guidelines for balancing the equities. Factors to examine include, but are not limited to the following: the income and expenses of both parties; whether the nondebtor spouse is jointly liable on the debts; the number of dependents; the nature of the debts; the reaffirmation of any debts; and the nondebtor spouse's ability to pay.

*In re Hill*, 184 B.R. 750, 755, 756 (Bkrtcy. N.D.Ill.1995). Looking to the factors enumerated in the *In re Hill* decision, which this Court adopts as the proper test pursuant to a § 523(a)(15)(B) determination, the Debtor has failed to show by the preponderance of the evidence that the benefit of his discharge outweighs the detrimental consequences to Ms. Campbell.

While it is apparent that neither Mr. or Ms. Campbell lead extravagant lifestyles, Mr. Campbell's gross income is over $70,000.00 per year compared to Ms. Campbell's gross salary of approximately $32,000.00 from her two jobs. Mr. Campbell has no dependents and is not paying alimony while Ms. Campbell is helping to support three daughters, one of whom lives with her and another in college.

Mr. Campbell's net income after expenses may be low for a $70,000.00 per year salary[4], however, these expenses include monthly payments for a new automobile, voluntary contributions to a retirement plan and expenses related to his voluntary work with a swim team, expenses which could be reasonably reduced by him. Ms. Campbell's expenses on the other hand, apart from her ordinary expenses, include paying her daughters' student loan debts (loans on which she is personally liable) supporting one daughter's current college expenses and monthly payments on several credit card balances incurred to meet her family's living expenses.

One of the reasons that this Court has determined that the proper time period for a determination pursuant to § 523(a)(15) is the time of the trial is to allow this Court to look at any changed circumstances since the entry of the Divorce Decree. The most obvious change of circumstance is the filing of Mr. Campbell's Chapter 7 petition which apart from the subject debts, resulted in his discharge of approximately $64,000.00 of unsecured debt.

A little over a month before the filing of the bankruptcy petition, the Family Court had already made a determination of the equities of the parties in the Divorce Decree. Having found that the majority of the value of the marital property was already invested in Mr. Campbell's retirement plan, and that Ms. Campbell was not entitled to alimony partly because of the property settlement, taking into consideration that Ms. Campbell was solely responsible for the student loans of her children and that Mr. Campbell was solely responsible for all of the credit card debt, the Family Court found that "[t]o balance equities between the parties, the husband should pay the wife the amount of $9,000.00 which represents approximately 50% of the marital assets remaining once the debts and assets are considered ... The husband is to keep all the savings and investment plan and retirement plan monies." Paragraph 23 of the Divorce Decree. With the discharge of approximately $64,000.00 in unsecured debt, approximately $63,000.00 representing the credit card debt referred to in the Divorce Decree, the equities and factors to be considered under § 523(a)(15)(B) as they exist at the time of trial weigh more heavily in favor of Ms. Campbell.

For all of these reasons, the Court concludes that under § 523(a)(15)(B), Mr. Campbell has failed to present sufficient evidence to indicate that the benefit to him of the discharge of this debt outweighs the detrimental consequence to Ms. Campbell. For the reasons stated within, it is therefore,

**ORDERED,** that the Debtor's obligation to the Plaintiff arising out of the Divorce

---

**4.** Mr. Campbell introduced evidence that he may be laid off from his job within the next year; however, whether there would be a lay off and whether the lay off would include his position remains entirely speculative.

Decree of June 21, 1995 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(15).

**AND IT IS SO ORDERED.**