**In the Matter of Stephen Marko SCIGO, Jr., Debtor.**

**Becky Jean SCIGO, Plaintiff,**

**v.**

**Stephen Marko SCIGO, Jr., Defendant.**

**Bankruptcy Nos. BK95–81855, A95–8096.**

United States Bankruptcy Court, D. Nebraska.

March 10, 1997.

Donald Roberts, Omaha, NE, for plaintiff.

Howard Duncan, Omaha, NE, for defendant.

## *MEMORANDUM*

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on February 5, 1997, on the adversary complaint. Appearances: Donald Roberts for the plaintiff and Howard Duncan for the defendant. This memorandum contains findings of fact and conclusions of law required by Fed. Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

### Background

The plaintiff, Becky Jean Scigo, filed this adversary proceeding on December 11, 1995 to determine the dischargeability of a property settlement agreement entered into by her and the debtor, Stephen Marko Scigo, Jr.

The parties had been married for 13 years at the time of the dissolution of their marriage and have a son who is now 14 years old. The son resides with the plaintiff. The debtor was ordered to pay $377.30 per month child support, and at the time of trial the debtor was current on those payments.

The plaintiff is currently employed by Holmes Freight Lines, and has been employed there for 21 years. The debtor is currently employed by Stuart Entertainment.

The plaintiff and the debtor incurred significant family medical expenses during their marriage. Both the debtor and the parties, son were diagnosed with cancer, and the son is being treated at the Mayo Clinic in Minnesota. The parties obtained a debt consolidation loan from First National Bank of Omaha (the bank) in the amount of $66,830.33 in order to reduce the amount of their monthly payments on their debts. The loan was only approved when the plaintiff's brother agreed to be a cosigner and pledged 4,266 shares of United Parcel Services stock as collateral for the loan.

The property settlement agreement provided that the debtor would be obligated to pay one half of the payment due each month on the loan until it was paid in full. The monthly payment under the note is $750 per month, with each party required to pay half of the amount. The debtor has not paid any amounts owed on the note since the divorce.

The plaintiff provided evidence that her monthly net income is $2,557.30 and her monthly expenses are $3,376.00. Her expenses included the entire $750 per month payment amount of the loan obligation to the bank. The debtor's net monthly income is $2,329.47 and expenses of between $2,137.70

and $2,237.70. His expenses do not include any amount for the loan obligation to the bank.

## Decision

The debtor's obligations to the plaintiff resulting from the property settlement and dissolution decree entered by the Douglas County District Court on October 16, 1995 are nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

## Discussion

The debtor has not asserted an inability to pay the debt obligation. See, 11 U.S.C. § 523(a)(15)(A). When the debtor does not raise the issue of ability to pay, the relevant section is § 523(a)(15)(B). Section 523(a)(15) provides in part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . .

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15)(B).

There is currently a split of authority on which party bears the burden of proof and the burden of production in a proceeding under § 523(a)(15). The majority of decisions place the burden of proof for § 523(a)(15)(A) and (B) on the debtor.[1] *Stone v. Stone (In re Stone)*, 199 B.R. 753, 760 (Bankr.N.D.Ala.1996), provides a comprehensive review of the cases which have dealt with the Section 523(a)(15)(A) and (B) issues. The courts following the majority viewpoint do not agree on the basis for the allocation of the burden of proof. One theory is that § 523(a)(15) creates a rebuttable presumption that the debt is nondischargeable. See, e.g., *Cleveland v. Cleveland*, 198 B.R. 394, 397 (Bankr.N.D.Ga.1996). The other theory is that the Ability to Pay and Detriment standards of § 523(a)(15) are affirmative defenses. See, e.g., *Campbell v. Campbell (In re Campbell)*, 198 B.R. 467, 471 (Bankr.D.S.C.1996).

There appear to be two different minority positions. One allocates the burden of proof to the debtor for the Ability to Pay standard, but allocates the Detriment standard to the former spouse. See, e.g., *Morris v. Morris (In re Morris)*, 197 B.R. 236 (Bankr. N.D.W.Va.1996). The other allocates the burden of proof on both issues to the former spouse. See, e.g., *Willey v. Willey (In re Willey)*, 198 B.R. 1007 (Bankr.S.D.Fla.1996).

The court in *Stone*, after reviewing the published decisions interpreting § 523(a)(15), concluded:

A review of and balancing of the various references results in the conclusion that multiple burdens of proof are at issue in a § 523(a)(15) action. The plaintiff-spouse/former spouse bears the burden of proof regarding the marital debt obligations and their occurrence, and the debtor-defendant is allotted the burdens of proof regarding the Ability to Pay and Detriment standards. Also connected with each burden of proof is a burden of going forward. As noted earlier, the burden of proof does not shift, but the burden of going forward for each burden of proof may go back and forth between the parties

---

1. All of the bankruptcy courts in the Eighth Circuit that have addressed the issue have placed the burden of proof on the debtor for both the Ability to Pay standard of 5 523(a)(15)(A) and the Detriment standard of § 523(a)(15)(B). See, *Johnston v. Henson (In re Henson)*, 197 B.R. 299 (Bankr.E.D.Ark.1996); *Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312 (Bankr.W.D.Ark.1996); *Straub v. Straub (In re Straub)*, 192 B.R. 522 (Bankr.D.N.D.1996); *Florio v. Florio (In re Florio)*, 187 B.R. 654 (Bankr.W.D.Mo.1995); *Becker v. Becker (In re Becker)*, 185 B.R. 567 (Bankr. W.D.Mo.1995).

based on the evidence presented. So once the plaintiff-former spouse/spouse presents sufficient evidence to establish that § 523(a)(15) is applicable due to the existence of a debt which (i) is not of the type under § 523(a)(5), and (ii) was incurred in the course of a divorce or separation, the *burden of going forward* shifts to the debtor to rebut the evidence presented by the spouse/former spouse on these fact issues. At the same time, the debtor-defendant must present sufficient evidence to meet his/her burden of proof to establish inability to pay and/or detriment under § 523(a)(15)(A) & (B). If this debtor-defendant's burden of proof is initially met, the burden of going forward to rebut this evidence on Ability to Pay and/or Detriment shifts to the former spouse/spouse. *Stone*, 199 B.R. at 783.

■ Although the court adopted the majority viewpoint regarding the allocation of the burden of proof, it found that the provisions in § 523(a)(15)(A) and (B) were not affirmative defenses, nor did § 523(a)(15) create a rebuttable presumption of nondischargeability, but rather the provisions were exceptions within the exception to discharge of § 523(a)(15).

[O]ne of the clearest and best reasons supporting placing—not shifting—the burdens of proof on the debtor for Ability to Pay and Detriment is the "exception within an exception" principle which has been used in the § 523(a)(8)(B) context to place the burden of undue hardship on the debtor . . .

Under the holding in *Hill v. Smith*, 260 U.S. 592, 595, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923), the party claiming the exception to a statutory provision is required to prove the exception. This principle is also held to apply to an exception within an exception. *Hill*, 260 U.S. at 595, 43 S.Ct. at 220[.]

*Id.* at 780. The excepting of property settlements from discharge is an exception to the general principal of dischargeability of debts. The Ability to Pay and Detriment standards are exceptions to that exception. See, *Id.*

In addition to the split among courts as to the burden of proof, there is also a split as to the point in time a bankruptcy court looks to in order to determine the Ability to Pay standard and the Detriment standard. Some courts have looked to the time of the filing of the petition; some have looked to the time of trial; and some have looked at the time period running through the time of trial and into the immediate future. *Willey*, 198 B.R. at 1013. See, e.g., *Carroll v. Carroll (In re Carroll)*, 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995) (time of filing); *Bodily v. Morris (In re Morris)*, 193 B.R. 949, 952 (Bankr.S.D.Cal. 1996) (time of trial); *Taylor v. Taylor (In re Taylor)*, 191 B.R. 760, 767 (Bankr.N.D.Ill.), *aff'd* 199 B.R. 37 (N.D.Ill.1996) (time of trial and immediate future). The plaintiff and debtor presented evidence as to their financial condition at the time of trial, and this standard will be applied. See, *Willey*, 198 B.R. at 1014.

■ As applied to this case, it is clear that the plaintiff has provided sufficient evidence that § 523(a)(15) is applicable due to the existence of a debt which (i) is not of the type under § 523(a)(5), and (ii) was incurred in the course of a divorce. The debtor, however, has not met his burden of proof with respect to the Detriment standard.

The parties have provided the following budgets:

Plaintiff's Monthly Earnings

| | | |
|---|---|---|
| Gross Monthly Income | : | $3,569.15 |
| FICA Tax | : | $ 262.29 |
| Federal Income Tax | : | $ 394.20 |
| State Income Tax | : | $ 144.04 |
| 401K | : | $ 71.31 |
| Health Insurance | : | $ 140.01 |
| Net Income | : | $2,557.30 |

Plaintiff's Monthly Expenses for Herself and Child

| | | |
|---|---|---|
| Mortgage | : | $ 544.00 |
| House Insurance | : | $ 30.00 |
| Utilities | : | $ 150.00 |
| U.S. West | : | $ 90.00 |
| Cellular Phone | : | $ 25.00 |
| Cox Cable | : | $ 25.00 |
| Credit Cards | : | $ 242.00 (from divorce) |
| Credit Cards | : | $ 160.00 (Mastercard, Penneys, Younkers) |
| First Nat'l Bank | : | $ 750.00 |
| Life Insurance | : | $ 28.00 |
| Dentist/Doctors | : | $ 30.00 |
| Prescriptions | : | $ 10.00 |
| Groceries | : | $ 400.00 |
| Yard Work | : | $ 60.00 |
| Haircuts | : | $ 40.00 |
| Cleaning/Laundry | : | $ 20.00 |
| School Supplies | : | $ 20.00 |
| School Lunches | : | $ 100.00 |
| Cosmetics/Toiletries | : | $ 50.00 |
| Clothing | : | $ 75.00 |
| Entertainment | : | $ 100.00 |
| Lunch (plaintiff) | : | $ 50.00 |
| Postage | : | $ 12.00 |
| Animal Care | : | $ 40.00 |
| Upkeep for House | : | $ 30.00 |
| Sports for son | : | $ 300.00 |
| | | |
| TOTAL | : | $3,376.00 |

| | | |
|---|---|---|
| **Plaintiff's Net Monthly Earnings** | : | **$2,557.30** |
| **Plaintiff's Monthly Expenses** | : | **3,376.00** |
| **Plaintiff's Surplus (Deficit)** | : | **($ 818.70)** |

Debtor's Monthly Earnings

| | | |
|---|---|---|
| Gross Income | : | $3,450.00 |
| Net Income | : | $2,329.47 |

Debtor's Monthly Expenses

| | | |
|---|---|---|
| Child Support | : | $ 377.30 |
| Rent | : | $ 350.00 |
| Groceries | : | $ 225.00 |
| Gas | : | $ 100.00 |
| Vehicle Upkeep | : | $ 70.00 |
| Auto Insurance | : | $ 71.33 |
| Dental/Medical/Life | : | $ 74.26 |
| Cable | : | $ 25.77 |
| Health Club | : | $ 36.00 |
| Haircut | : | $ 15.00 |
| Checking Account Fee | : | $ 10.00 |
| Dry Cleaning | : | $ 60.00 |
| Laundry | : | $ 40.00 |
| Phone | : | $ 30.00 |
| Nebraska Furn. Mart | : | $ 42.02 |
| Car Loan | : | $ 196.02 |
| Personal Loan | : | $ 100.00 |
| OPPD | : | $ 40.00 |
| MUD | : | $ 25.00 |
| Clothing | : | $ 75.00 |

| | | |
|---|---|---|
| Savings | : | $    75.00 |
| Social Expenditures | : | $  200.00 |

| | | |
|---|---|---|
| Total | : | $2,237.70 |
| **Debtor's Net Monthly Earnings** | : | $2,329.47 |
| **Debtor's Monthly Expenses** | : | $2,237.70 |
| **Debtor's Surplus (Deficit)** | : | $    91.77 |

The expenses for both parties appear to be somewhat inflated. The debtor has claimed expenses of $74.26 per month for dental, medical and life insurance that have already been deducted from his gross monthly income of $3,450.03 to calculate his net income. His expenses also indicate $75.00 per month for savings, $100.00 per month for a loan from his parents that was not scheduled in his bankruptcy case, and $200 per month for "social expenditures" which he characterized at the hearing as "dating expenses."

The plaintiff's income does not appear to include the amount she receives monthly for child support. In addition, if the debtor were required to pay half of the bank's loan, her expenses would be reduced by that amount.

Adjusting the figures by those amounts discussed would provide as follows:

| | | |
|---|---|---|
| **Plaintiff's Monthly Income** | : | $2,934.60 [2] |
| **Plaintiff's Monthly Expenses** | : | $3,001.00 [3] |
| **Plaintiff's Surplus (Deficit)** | : | ($    66.40) |
| | | |
| **Debtor's Monthly Income** | : | $2,329.47 |
| **Debtor's Monthly Expenses** | : | $2,263.44 [4] |
| **Debtor's Surplus (Deficit)** | : | $    66.03 |

After making the deductions and additions to the budgets, it is evident from the plaintiff's income and expenses that she is unable to pay her bills as they become due and will have difficulty meeting her monthly expenses even if the debtor is required to pay his obligations under the divorce decree. On the other hand, the debtor could pay his obligations under the divorce decree and still have a surplus.

Discharging the debtor's obligations under the divorce decree would not result in a benefit to the debtor that outweighs the detrimental consequences to the plaintiff. The discharge of this obligation would "simply provide [the] Debtor with additional disposable income to 'use at his discretion.' This is not the type of benefit that section 523(a)(15)(B) ought to protect." *Carroll,* 187 B.R. at 201.

Accordingly, the debtor's obligations to the plaintiff from their property settlement and divorce decree are nondischargeable obligations.

2. This figure is obtained by adding the plaintiff's net monthly earnings of $2,557.30 and the amount of child support she receives monthly of $377.30.

3. This figure is obtained by subtracting $375.00 (half of the First National Bank loan) from the plaintiff's monthly expenses of $3,376.00.

4. This figure is obtained by adding $375.00 to the debtor's monthly expenses of $2,237.70, and then subtracting from that figure $100.00 from "social expenditures," $75.00 for savings, $100.00 for the unscheduled personal loan to the debtor's parents, and $74.26 for the double deductions of dental, medical, and life insurance.