**In the Matter of Donald K. WILLIAMS, Debtor.**

**Virginia G. WILLIAMS, Plaintiff,**

**v.**

**Donald K. WILLIAMS, Defendant.**

**Bankruptcy Nos. BK96–80428, A96–8064.**

United States Bankruptcy Court,
D. Nebraska.

May 2, 1997.

Michael J. O'Bradovich, Omaha, NE, for debtor.

John Lingo, Omaha, NE, for plaintiff.

## MEMORANDUM

### TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on March 5, 1997, on the adversary complaint. Appearances: Michael O'Bradovich for the debtor defendant and John Lingo for the plaintiff. This memorandum contains findings of fact and conclusions of law required by Fed. Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

### Background

The plaintiff, Virginia Williams, and the debtor/defendant, Donald Williams, were married on November 24, 1955 and were divorced on November 16, 1989. Virginia is currently 59 years old and Donald is currently 65 years old. Together, the parties have four children, all of whom are over the age of majority.

During the course of the parties' marriage, they started a business known as Williams Flowers. The business was originally located at the Center Mall in Omaha, Nebraska, but eventually became located at the Westroads Mall.

As part of the property division incorporated into the decree of dissolution, Donald was awarded both the marital home (where he currently resides) and the business, subject to their respective indebtedness. Virginia was awarded a five year employment contract with Williams Flowers at a monthly salary of $2,000 and a $50,000 lump sum payment at the end of the five year period. She has not received payment on the lump sum award except for a small amount which was garnished from Donald's personal bank account.

On January 5, 1991, Virginia was injured while setting up a bridal show at a local hotel for Williams Flowers. As a result of her injuries, she has had numerous back surgeries and has had problems with her legs and knees. Her final surgery on her back was an anterior/posterior fusion, wherein metal bars were inserted in her back. For workers' compensation purposes, she was given a whole body impairment rating of 25%.

As a result of the accident, Virginia entered into a structured settlement. The settlement provides that Virginia will receive $800 per month until she reaches the age of 65. At that time, the amount will be reduced to $400, and will last until she dies. The settlement also provided Virginia a lump sum amount of $67,808 which she used to purchase a house. (The house has a current value of $135,000.)

Virginia spent approximately one year recuperating from her injuries. Following her recuperation, Williams did not allow her to return to her employment with it, apparently for insurance reasons. Virginia subsequently found work at another flower shop in the Omaha area. She has been employed there for two years and works full time. She works six days per week, and receives a net salary of $879 for every two weeks.

Virginia's current monthly income is $2,704.50, which includes her structured settlement and her income from the flower shop. Her current monthly expenses are $2,299.33. She therefore has a net monthly surplus of $405.17.

Donald is currently employed part time delivering flowers. He also receives social security income and veterans' disability income. His total net monthly income from all sources is $1,750 per month. He performs work for one of his daughters who owns a flower shop, but asserts that he is not compensated for the work.

Donald currently lives with his youngest son in the marital home that was awarded to him by the dissolution decree. The value of the home is $92,000. The house is subject to one mortgage lien of $51,148.04. The remaining equity of $40,851.96 is Donald's.

There is no evidence as to Donald's current monthly expenses. There was evidence that he splits some of his monthly bills with his youngest son, and that his son manages Donald's finances. He does not have a bank account, but rather uses his son's bank account, to prevent a garnishment of his funds by Virginia.

Donald filed his petition for relief under Chapter 7 on March 5, 1996. Virginia commenced this action on June 12, 1996, alleging that the lump sum payment owed to her in the current amount of $47,247.82 is nondischargeable pursuant to 11 U.S.C. § 523(a)(15). Donald filed a responsive pleading on August 12, 1996, asserting that the debt was dischargeable. A trial of the matter was held on March 5, 1997.

### Decision

■ The debtor's obligation to his ex-spouse in the current amount of $47,247.82 is a nondischargeable obligation under 11 U.S.C. § 523(a)(15).

### Findings of Fact, Conclusions of Law and Discussion

■ Section 523(a)(15) provides in part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor . . .

11 U.S.C. § 523(a)(15)(A) and (B). The plaintiff bears the burden of proving that " § 523(a)(15) is applicable due to the existence of a debt which (i) is not of the type under § 523(a)(5), and (ii) was incurred in the course of a divorce or separation . . ." *In re Scigo*, 208 B.R. 470 (Bankr.D.Neb.1997) (quoting *Stone v. Stone (In re Stone)*, 199 B.R. 753, 783 (Bankr.N.D.Ala.1996)). The debtor, correspondingly, bears the burden of establishing either the inability to pay standard of 11 U.S.C. § 523(a)(15)(A) or the detriment standard of 11 U.S.C. § 523(a)(15)(B). *Id.*

It is clear from the evidence that Virginia has met her burden of proof. The debt in question is not of the type under § 523(a)(5) and was incurred in the course of a divorce. In order to receive a discharge, Donald must prove by a preponderance of the evidence that he lacks the ability to pay the debt or that receiving a discharge will result in a benefit to him that outweighs any detriment to Virginia.

### A. Ability to Pay Standard

■ The debtor has not offered any evidence as to his monthly expenses and therefore this court cannot calculate whether or not he has an inability to pay the debt. The debtor therefore has failed to meet his burden as to this issue.

In addition, it is apparent from evidence adduced at trial that the debtor does have over $40,000 in equity in the house in which he resides. This amount would almost be enough to satisfy the debt in full.

The fact that Donald has over $40,000 in equity in his house following his Chapter 7 case requires some further explanation. At

the time of his filing, Donald's house was encumbered by a second lien held by Western Security Bank. On April 12, 1990, Western Security Bank renewed a previous note and loaned Williams Flowers an additional $68,128.95. Both parties signed the note in their personal capacities. As security for the loan, Donald gave Western Security Bank a second lien on his house. The Chapter 7 Trustee abandoned the property to Donald because the property was encumbered by the two liens.

The Trustee also abandoned a lawsuit which Donald was in the process of bringing against the successors to the lease of Williams Flowers at the Westroads Mall. That lawsuit was eventually settled following abandonment, and the entire amount of the settlement was used to satisfy Western Security Bank's lien in full.

■ The fact that the debtor in this case had virtually no equity in his house beyond his homestead exemption on the date of filing and had over $40,000 in equity on the date of trial highlights a current split of authority among bankruptcy courts as to the point in time a bankruptcy court looks to in order to determine both the ability to pay standard of § 523(a)(15)(A) and the detriment standard of § 523(a)(15)(B). See, *Scigo*, Neb. Bankr.97:97, 101–02. "Some courts have looked to the time of the filing of the petition; some have looked to the time of trial; and some have looked at the time of trial and into the immediate future." *Id.* at 473. In *Scigo*, this court looked at the time of trial, and the same standard will be applied in this case.

### B. *Detriment Standard*

■ Although, under 11 U.S.C. § 523(a)(15)(A), it has been determined the debtor has the ability to pay the debt, he may receive a discharge if he can prove that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse or child of the debtor . . ." 11 U.S.C. § 523(a)(15)(B). See, e.g., *Armstrong v. Armstrong (In re Armstrong)*, 205 B.R. 386, 392 (Bankr.W.D.Tenn.1996); *Cleveland v. Cleveland (In re Cleveland)*, 198 B.R. 394, 400 (Bankr.N.D.Ga.1996); *In re Smither*, 194

B.R. 102, 110 (Bankr.W.D.Ky.1996). The court in *Smither* provided a set of factors that a bankruptcy court should consider in making a determination as to the dischargeability of an obligation under § 523(a)(15)(B):

> This Court believes that the best way to apply the 11 U.S.C. § 523(a)(15)(B) balancing test is to review the financial status of the debtor and the creditor and compare their relative standards of living to determine the true benefit of the debtor's possible discharge against any hardship the spouse, former spouse and/or children would suffer as a result of the debtor's discharge. If, after making this analysis, the debtor's standard of living will be greater than or approximately equal to the creditor's if the debt is not discharged, then the debt should be nondischargeable under the 523(a)(15)(B) test. However, if the debtor's standard of living will fall materially below the creditor's standard of living if the debt is not discharged, then the debt should be discharged under 11 U.S.C. § 523(a)(15)(B).

*Id.* at 111.

It is difficult to determine the true benefit to Donald of a discharge without any evidence as to his current monthly expenses. However, there is no question that he would receive a significant benefit.

Donald is at the age when most people begin to retire, and only works part time. Virginia is employed full time, but she has a 25% impairment rating of the whole body as a result of her accident and has health problems which may prevent her from working for much longer. She is also nearing retirement age, and the age at which her structured settlement will be reduced. He received the house and the business by decree, and she received a promise of a future payment from some asset of his. He no longer has the business asset, but does have equity in the house.

The benefit to him, if the debt is discharged, is the release of a $47,000 debt, leaving him with $40,000 or so of equity. The detriment to her is a loss of $47,000 which she may need for her future. It ap-

pears to be a toss up and, therefore, the debt is nondischargeable.

### C. *Judgment Lien*

■ The parties were requested to consider mediation both before and after the trial was held. They declined.

One of the reasons this court requested mediation of this case a second time was the effect of Neb.Rev.Stat. § 42–371 (Reissue 1993) on the controversy. That statute provides in part:

(1) All judgments and orders for payment of money shall be liens, as in other actions, upon real property and personal property registered with any county office and may be enforced or collected by execution and the means authorized for collection of money judgments...

(2) Child support and spousal support judgments shall cease to be liens on real or registered personal property ten years from the date (a) the youngest child becomes of age or dies or (b) the most recent execution was issued to collect the judgment, whichever is later, and such lien shall not be reinstated;

(3) Alimony and property settlement award judgments, if not covered by subdivision (2) of this section, shall cease to be a lien on real or registered property ten years from the date (a) the judgment was entered, (b) the most recent payment was made, or(c) the most recent execution was issued to collect the judgment, whichever is latest, and such lien shall not be reinstated

Neb.Rev.Stat. 42–371 (Reissue 1993). The Nebraska Supreme Court has held that property settlements incorporated into dissolution decrees are subject to this statute. *Lacey v. Lacey,* 215 Neb. 162, 337 N.W.2d 740 (1983); *Grosvenor v. Grosvenor,* 206 Neb. 395, 293 N.W.2d 96 (1980).

As applied to this case, the $50,000 lump sum award to Virginia as part of the property settlement is a lien against Donald's house. This lien passed through bankruptcy and is still in place. Thus, it matters little whether the debt was found to be dischargeable or nondischargeable, as Virginia could foreclose on her lien regardless of the outcome of this adversary proceeding.

### D. *Conclusion*

The debtor has failed to meet his burden of proof with regard to § 523(a)(15)(A) and (B). Accordingly, the property settlement payment due and owing Virginia Williams in the amount of $47,247.82 is nondischargeable.

Separate journal entry to be filed.