In re Michael Keihm SMITH, Debtor.

Regina Beth Smith, Plaintiff,

v.

Michael Keihm Smith, Defendant.

Bankruptcy No. 00–50310–7.
Adversary No. 00–5029.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Jan. 4, 2001.

J. Craig Johnston, Lubbock, TX, for plaintiff.

Richard D. Ladd, Lubbock, TX, for defendant.

### *MEMORANDUM OPINION*

ROBERT L. JONES, Bankruptcy Judge.

Regina Beth Smith (Ms. Smith) contends the sum of $9,339.90, arising from debts that Michael Keihm Smith (Mr. Smith), the Debtor, agreed to pay upon their divorce, should be declared nondischargeable under § 523(a)(15). Mr. Smith raises the defenses afforded by subsections (A) and (B) of § 523(a)(15), asserting the debt should be discharged as he is unable to pay the debt and that discharging the debt would result in a benefit to him that outweighs the detrimental consequences to Ms. Smith.

This court has jurisdiction of this matter under 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(I). This memorandum opinion contains the court's findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

### Facts

Mr. Smith filed this Chapter 7 case on March 21, 2000. He received his discharge of all dischargeable debts on July 17, 2000. There is no dispute regarding either the amount of debt or whether Mr. Smith is obligated to pay such debt under the terms of the parties' divorce decree. The Smiths were divorced on February 23, 1999. The divorce decree provides that Mr. Smith shall pay a VISA credit card debt of $2,407.54, a debt owing to Sears of $6,221.36, any farm debt owing to the "1st Bank, Muleshoe, Texas", and any other farm debt. Plaintiff's Exh. 1. Ms. Smith must pay a "Bankamerica" credit card debt of $2,779.16 and a doctor's bill of $2,267.00. *Id.* They are each responsible for one-half of any federal income tax liabilities incurred from the date of marriage through December 31, 1998. *Id.* There was no evidence of any farm debt owing to either the 1st Bank, Muleshoe, Texas, or to any other party.

Ms. Smith paid the 1998 income taxes of $1,422.00, of which Mr. Smith is responsible for half. The $9,339.90 at issue arises from the unpaid VISA card, the Sears' debt, and one-half of the 1998 taxes. In addition to paying the 1998 taxes, Ms. Smith has been making monthly installments on the Sears' debt thereby reducing the balance to approximately $5,900.00. The Sears' debt arose from the purchase of tools now owned and used by Mr. Smith. Ms. Smith has also been making the minimum required payments on the VISA credit card, resulting in a present balance of approximately $1,700.00.

Ms. Smith is employed by Minsa Southwest Corporation in Muleshoe, Texas. She has worked there for seventeen years and presently serves as a customer service representative. In 1998, she earned, before taxes, $55,332.59. Exh. D–1 (Ms. Smith's W–2). Her wages are slightly less now, approximately $50,000.00, but she is provided with a company car. Ms. Smith testified that her monthly expenses total approximately $1,391.00, including a $535.00 house payment (including taxes and insurance), $150.00 for utilities, $400.00 for food, $40.00 for telephone, $43.00 for cable, $150.00 for furniture, $28.00 for maid service, and $45.00 for yard work. By the terms of the divorce decree, she receives $550.00 a month child support payments to support the Smiths' two daughters.

Ms. Smith has saved approximately $22,000.00 from the child support payments, which is earmarked for the children's college expenses. Ms. Smith also has a 401k retirement account, but is unaware of the precise amount in the account. It is substantial, however, as her

employer has contributed six percent of her annual income each year for the past seventeen years to this account. Her children go to her place of employment after school, thereby avoiding child care expenses.

Mr. Smith and his present wife, Melissa, live in Lazbuddie, Texas. He is employed by West Texas Equipment and is provided a company truck. They live rent free in a house owned by his father. They are not supporting any children at home. In 1998, he made, before taxes, slightly more than $43,000.00. Exh. D–1 (Mr. Smith's W–2). In 1999, his total income before taxes was $43,643.41. Plaintiff's Exh. 6. For 2000, through September 15, 2000, he has earned, before taxes, $36,203.55. Plaintiff's Exh. 8. He admitted that he should earn approximately $43–$46,000.00 in 2000. In May, 2000, he received a tax refund of $3,612.00. His wife, Melissa, does not work. According to Mr. Smith, Melissa has suffered four heart attacks and is thus unable to work. He further testified that she has over $100,000.00 in medical bills. Mr. Smith and Melissa have eleven credit cards, two of which are in Mr. Smith's name. They have a monthly car payment of approximately $300.00 for a car she uses.

The Debtor's Schedule I—Current Income of Individual Debtor, grossly understates Mr. Smith's monthly income. It states that his current monthly gross income is $1,537.50. After deductions, it represents that he has net income of $768.44. A review of Mr. Smith's earnings for the past twelve months reveals that his average gross monthly income is $3,908.00, and his average net monthly income is $2,028.00. See Exh. D–4. In addition, the Debtor's Schedule J—Current Expenditures of Individual Debtor, reflects total monthly expenses of $2,148.00, including support payments of $550.00 a month and an installment payment of $540.00 a month on an unspecified obligation. It should be noted that the Debtor's Schedule I, reflecting current income, reflects a deduction for child support payments. It appears, therefore, that the child support payments are both deducted from income on Schedule I and included as an expense on Schedule J. In short, Mr. Smith has misstated his income and expenses in a manner that gives the appearance that his financial condition is worse than it actually is. The schedules further reveal that Mr. Smith has a 401k retirement plan that is not presently vested but has a value of $9,360.00, no secured debts, and in excess of $92,900.00 in unsecured claims. None of the debts reflected on Mr. Smith's schedules appear to constitute medical bills arising from his wife's medical condition; nor do the schedules include the additional credit card debt to which he testified.

## Discussion

Section 523(a)(15) states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

■ As the debt in question arises from a divorce decree, Ms. Smith satisfied her initial burden of proof. *See In the Matter of Gamble,* 143 F.3d 223, 226 (5th Cir.1998) (affirming a prior decision of this court by holding that the creditor/ex-wife has the burden of initially establishing that the debt is of a kind not in the nature of alimony or child support as exempted from § 523(a)(5) but is incurred by the debtor in the course of a divorce or separation). Mr. Smith must then carry the burden of establishing that he meets either of the two exceptions set forth at subsections (A) and (B) of § 523(a)(15). *Id.* With respect to the § 523(a)(15)(A) "ability to pay" exception, Mr. Smith contends that his income, in light of his expenses, is not sufficient to allow him to pay the debt in question or to even make meaningful payments against the debt. In this regard, the court notes that Mr. Smith understated his income on Schedule I. In addition, Mr. Smith testified that his wife, Melissa, has over $100,000.00 in medical bills. However, a review of Mr. Smith's schedules does not reveal any medical bills. Mr. Smith testified further that he and Melissa have eleven credit cards, two of which are in his name. As with the medical bills, the schedules do not reflect the additional credit card debt.

■ To determine whether Mr. Smith has met his burden, the court must, under the circumstances, evaluate his credibility. Mr. Smith offered no plausible explanation for misstating his income on Schedule I, and he failed to explain questionable expenses on Schedule J. Moreover, his answer to the complaint initiating this adversary proceeding states that he was not represented by counsel during the divorce, which in fact he was, as he admitted at trial.

Given Mr. Smith's misrepresentations and misstatements in pleadings filed with this court, the court gives little credibility to his assertion that he simply cannot afford to pay anything further. The court notes that his listed expenses include a $180.00 a month phone bill, $500.00 a month for groceries, and $550.00 monthly installments for "other" expenses. Perhaps this latter expense relates to credit card payments that he and his wife, Melissa, make. Mr. Smith testified that he and Melissa sometimes "double up" on credit card payments. While this is laudable under normal circumstances, it is improper given his obligation to Ms. Smith.

The bottom line is that Mr. Smith makes as much now, and actually a bit more, than he did when he agreed to the terms of the divorce decree. Moreover, by virtue of this bankruptcy filing, he has discharged over $83,000.00 in debts. He lives rent free and has the use of a company vehicle. The court believes that Mr. Smith can, perhaps with some belt tightening, make reasonable and significant payments on the debts he agreed to pay in the divorce decree.

In short, the court finds that Mr. Smith has failed to meet his burden of establishing that he does not have ability to pay the debt to his ex-wife.

■ The court next addresses the benefit/detriment analysis imposed by § 523(a)(2)(B). An assessment of the benefit to Mr. Smith compared to the detrimental consequences to Ms. Smith arising from discharging the debt "implicates an analysis of the totality of the circumstances, not just a comparison of the parties' relative net worths." *In the Matter of Gamble,* 143 F.3d at 226. Before the court can engage in this benefit/detriment analysis, it must be provided with a clear picture of Mr. Smith's present financial condition. As the court has questioned Mr. Smith's credibility and his assertion that he is unable to pay the debt to Ms. Smith, it is very difficult for the court to balance the benefit to Mr. Smith of discharging the debt against the detrimental consequences to Ms. Smith. Indeed, in this case, the court concludes it is impossible to make a meaningful analysis of the relative financial impact to Mr. Smith and Ms. Smith of

discharging the debt. The court notes that Ms. Smith has a greater net worth than Mr. Smith. She has a substantial 401k retirement plan and has saved approximately $22,000.00 for her children's college education. She has purchased an inexpensive home since the divorce and appears to live very modestly. But Mr. Smith has already discharged over $83,000.00 in debt; he has no house payment and no children living with him and Melissa. Discharging this remaining indebtedness would certainly improve his financial condition even further. Likewise, however, discharging the debt would impose some hardship on Ms. Smith.

It is not lost on the court that much of the debt arose from use of the Sears' credit card for the purchase of tools owned and being used by Mr. Smith. Plus, the tax refund recently received by Mr. Smith could be applied against the debt. And the court is mindful of the fact that, if the debt were discharged, Ms. Smith would, in effect, be punished for apparently handling her financial affairs since the divorce more responsibly than has Mr. Smith.

Accordingly, the court finds that, as with the subsection (A) ability to pay exception, Mr. Smith has failed to carry his burden under the subsection (B) benefit/detriment exception. *See Matter of Williams*, 210 B.R. 344 (Bankr.D.Neb.1997) (If the benefit/detriment analysis results in a "toss up", the debt is nondischargeable).

For the foregoing reasons, the court finds that the indebtedness owing by Mr. Smith to Ms. Smith of $9,339.90 is nondischargeable. The court will enter a judgment in accordance with this opinion.